UNITED STATES of America, Plaintiff,

v.

James FEENEY, Defendant,

v.

John C. WHITE, Intervenor.

Crim. A. No. 80–CR–54.

United States District Court,
D. Colorado.

Oct. 20, 1980.

Joseph F. Dolan, U.S. Atty., Susan R. Roberts, First Asst. U.S. Atty., Denver, Colo., for plaintiff.

Daniel J. Sears, Denver, Colo., for defendant.

Verner, Liipfert, Bernhard & McPherson by Stuart F. Pierson, Washington, D.C., for intervenor.

## MEMORANDUM OPINION

WINNER, Chief Judge.

Under the principles of *Brady v. Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, defendant Feeney seeks to present evidence said to be material to sentencing and important to his motion for judgment of acquittal or a new trial. He has subpoenaed government officials who, Feeney says, can testify to facts which will demonstrate that he was at all times cooperating with the United States Attorney's Office for the Southern District of New. York; that he was acting with what he thought was official approval of his conduct and that he had no criminal intent. Feeney says additionally that even if a jury were to find the requisite intent, the testimony is relevant to sentencing, and *Brady v. Maryland* requires that testimony be received which may bear on the sentence to be imposed.

In response to his subpoena, Philip B. Heymann, an Assistant Attorney General of the United States, filed a motion to quash based on the somewhat technical ground that defendant failed to file an affidavit explaining the purpose of the subpoena. That affidavit has now been filed. Raymond A. Levites, Assistant United States Attorney, Southern District of New York, and Thomas P. Doonan, Investigator, United States Attorney's Office, Southern District of New York, responded to their subpoenas, and, when they thought the questioning was becoming sticky, fell back on a letter written to each of them by the Deputy Attorney General. Those separate letters, each dated September 30, 1980, read:

> "In connection with your appearance as a witness in the post conviction proceedings involving James Feeney in the District of Colorado you are authorized to answer questions concerning Mr. Feeney's cooperation with the government, the completeness of the Feeney tapes previously furnished to the court, the Department's awareness of his other activities, and directly related matters. In the event the questioning goes beyond these areas *and you are asked about ongoing investigations* you should respectfully decline to answer and advise the court you must seek further instructions from the Department of Justice pursuant to 28 C.F.R. 16.21, et seq. See *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 [71 S.Ct. 416, 95 L.Ed. 417]."

With inconsistent exercise of individual decision by each witness as to what was a "directly related matter" he could refuse to disclose, I was faced with a decision I have never before been required to make in a criminal case. Certainly, I have been down the road of claimed bureaucratic privilege many times before in civil cases, and in past civil cases, I have been sympathetic with the witness who is doing no more than obeying the orders of his superior. I asked for briefs, and I now must decide what should be done with the directive of the Deputy Attorney General, an office and a

person for which and for whom I have the greatest respect.

I have read as much law as I have been able to locate discussing the problem, and I find that my thinking expressed in a paper presented to the Tenth Circuit Judicial Conference in 1960, concerning claims of governmental privilege made in civil cases is applicable to similar 1980 claims in criminal cases. See 28 F.R.D. 97. With equal conviction, in this criminal case, I stand by my 1974 thinking in a civil case, *Equal Employment Opportunity Commission v. Los Alamos Constructors* (1974) D.C.N.M., 382 F.Supp. 1373.

The letter written by the Deputy Attorney General is based on federal regulations in Title 28. They read:

"§ 16.22  Production or disclosure prohibited unless approved by appropriate Department official.

"No employee or former employee of the Department of Justice shall, in response to a demand of a court or other authority, produce any material contained in the files of the Department or disclose any information relating to material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of his official duties or because of his official status without prior approval of the appropriate Department official or the Attorney General in accordance with § 16.24."

§ 16.23 describes the procedure to be followed by government employees who receive a subpoena, and it says:

"(c) If oral testimony is sought by the demand, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or his attorney, setting forth a summary of the testimony desired, must be furnished for submission by the U.S. attorney to the appropriate Department official."

It was the omission of this documentation on which Mr. Heymann grounded his motion to quash, but the documentation is now on file.

The regulations then make provision for referring the decision as to whether a subpoena should or should not be honored up the chain of command, and this subpart of Title 28 of the Code of Federal Regulations winds up:

"§ 16.25  Procedure where a Department decision concerning a demand is not made prior to the time a response to the demand is required.

"If response to the demand is required before the instructions from the appropriate Department official or the Attorney General are received, the U.S. attorney or other Department attorney designated for the purpose shall appear with the employee or former employee of the Department upon whom the demand has been made, and shall furnish the court or other authority with a copy of the regulations contained in this subpart and inform the court or other authority that the demand has been, or is being, as the case may be, referred for the prompt consideration of the appropriate Department official and shall respectfully request the court or authority to stay the demand pending receipt of the requested instructions.

"§ 16.26  Procedure in the event of an adverse ruling.

"If the court or other authority declines to stay the effect of the demand in response to a request made in accordance with § 16.25 pending receipt of instructions, or if the court or other authority rules that the demand must be complied with irrespective of instructions not to produce the material or disclose the information sought, in accordance with § 16.-24, the employee or former employee upon whom the demand has been made shall respectfully decline to comply with the demand.  '*United States ex rel. Touhy v. Ragen*,' 340 U.S. 462 [71 S.Ct. 416, 95 L.Ed. 417]."

▮▮▮▮  Thus, the United States Department of Justice has adopted a regulation which commands that its employees "respectfully decline to comply with" a court order, and the government's brief ignores

the problem of what happens at this point, except that the government does say that I can listen to the testimony in camera. No mention is made of what the witness will do if I say at that point that I think the testimony should be repeated in public in line with my thinking that except in extremely unusual circumstances trials must be open to the public. As I have said before, I think that the public should be able to hear testimony on which a sentencing decision is based, just as a jury should be permitted to hear testimony bearing on a defendant's criminal intent or lack thereof.

I repeat that I have written twice on this question in civil cases, and now I write again in a criminal case, because I think that the rights of a defendant in a criminal case to full public presentation of the facts are even greater than are the rights of a party in a civil suit. As I shall mention presently, the Supreme Court seems to share this view.

The statutory underpinning claimed for the regulation was for many years 5 U.S.C. § 22, but it is now 5 U.S.C. § 301. The statute formerly read:

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

In 1958, Congress expressed dismay at the burgeoning claims of executive privilege to govern in secret, and it added to 5 U.S.C. § 22, the sentence, "This section does not authorize withholding of information from the public or limiting the availability of records to the public." The optimism I expressed in my 1960 paper as to the benefits which would result from this amendment didn't prove out, and, as all know, after many years of jousting, Congress became convinced that teeth had to be added to the law. The Freedom of Information Act was passed as the answer to most governmental secrecy claims, but it doesn't help here.

Today's statute, 5 U.S.C. § 301 continues the 1958 amendment, and it changes the language of the law to read:

"The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

With this brief statutory history, I come to a review of important Supreme Court decisions looking to the problem. It all started with John Marshall and Aaron Burr, and by remarkable historical coincidence, it started with an effort to keep secret information supplied by an informer. General Wilkinson wrote Thomas Jefferson confidential letters saying that Burr was organizing a rebellion, and, after Burr was indicted for treason, Burr wanted to examine those letters. Jefferson claimed executive privilege, and, in the treason prosecution, *United States v. Burr*, No. 14,692D, 25 Fed. Cas. 30, Chief Justice Marshall [sitting as a trial judge] said:

"It is a principle, universally acknowledged, that a party has a right to oppose to the testimony of any witness against him, the declarations which that witness has made at other times on the same subject. If he possesses this right, he must bring forward proof of those declarations. This proof must be obtained before he knows positively what the witness will say; for if he waits until the witness has been heard at the trial, it is too late to meet him with his former declarations. Those former declarations, therefore, constitute a mass of testimony, which a party has a right to obtain by way of precaution, and the positive necessity of which can only be decided at the trial...."

Burr was prosecuted not only for treason, but also for a misdemeanor, and in that prosecution, No. 14,694, 25 Fed.Cas. 187, it was insisted that parts of a letter General

Wilkinson wrote President Jefferson not be disclosed. The Chief Justice wrote:

"If this might be likened to a civil case, the law is express on the subject. It is that either party may require the other to produce books or writings in their possession or power, which contain evidence pertinent to the issue. In this respect the courts of law are invested with the power of a court of chancery, and if the order be disobeyed by the plaintiff, judgment as in the case of a nonsuit may be entered against him. ... It is a very serious thing, if such letters should contain any information material to the defense, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances."

The executive privilege claim first came before the Supreme Court in 1900 in *Boske v. Comingore*, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846. The Secretary of the Treasury had adopted a regulation saying that the files of revenue collectors were confidential and that they couldn't be disclosed without his approval. Kentucky wanted to tax some bonded whiskey, and a state court ordered the collector to produce his files. The Supreme Court held that the Secretary could adopt a regulation which required that a decision concerning production of records could not be made by a subordinate. It was held:

"In our opinion the Secretary, under the regulations as to the custody, use, and preservation of the records, papers, and property appertaining to the business of his department, may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character."

Fifty years later, in *Touhy v. Ragen* (1951) 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417, Roger Touhy a criminal of national notoriety, brought a habeas corpus proceeding, and the Department of Justice refused to respond to a subpoena duces tecum. The refusal was based on 5 U.S.C. § 22 and on a Justice Department order which read in material part:

"No officer or employee may permit the disclosure or use of (information) for any purpose other than for the performance of his official duties, except in the discretion of the Attorney General, or an Assistant Attorney General acting for him."

The full Justice Department order is set forth in a footnote of the opinion, and it directed the witness to do just about what today's 28 C.F.R. § 16.23, et seq. tells Justice Department employees to do. The District Court ordered the witness to produce the subpoenaed data, but the Court of Appeals reversed, saying:

"(The Justice Department order) confers upon the Department of Justice the privilege of refusing to produce unless there has been a waiver of such privilege."

Justice Reed's opinion did not reach the ultimate question of the legality of the order. He carefully limited the impact of his opinion when he said:

"We find it unnecessary, however to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal. *The Attorney General was not before the trial court.*"

The narrowness of the Court's decision in *Touhy* is emphasized:

"The validity of the superior's action is in issue only insofar as we must determine whether the Attorney General can validly withdraw from his subordinates the power to release department papers....

"The constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling. We think Order No. 3229 is consistent with law. This case is ruled

by *Boske v. Comingore*, 177 U.S. 459 [20 S.Ct. 701, 44 L.Ed. 846]. ... (That case) concluded that the Secretary's reservation *for his own determination* of all matters of that character was lawful. We see no material distinction between that case and this."

Two years later the Court was unable to limit its decision to a holding that there need be no delegation of authority to decide when executive privilege should be claimed. In *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, the Secretary of the Air Force personally made claim of executive privilege, and the question was squarely before the Court. This was a Federal Tort Claims case, and the Secretary said that the requested disclosure could not be made "without seriously hampering national security, flying safety, and the development of highly technical and secret military equipment." Chief Justice Vinson authored the opinion and he said:

"When the Secretary of the Air Force lodged his formal 'Claim of Privilege,' he attempted therein to invoke the privilege against revealing military secrets, a privilege which is well established in the law of evidence. The existence of the privilege is conceded by the court below, and, indeed, by the most outspoken critics of governmental claims to privilege.

"Judicial experience with the privilege which protects military and state secrets has been limited in this country. English experience has been more extensive, but still relatively slight compared with other evidentiary privileges. Nevertheless, the principles which control the application of the privilege emerge quite clearly from the available precedents. *The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forc-*ing a disclosure of the very thing the privilege is designed to protect.* The latter requirement is the only one which presents real difficulty. As to it, we find it helpful to draw upon judicial experience in dealing with an analogous privilege, the privilege against self–incrimination.

"The privilege against self–incrimination presented the courts with a similar sort of problem. Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses. Indeed, in the earlier stages of judicial experience with the problem, both extremes were advocated, some saying that the bare assertion by the witness must be taken as conclusive, and others saying that the witness should be required to reveal the matter behind his claim of privilege to the judge for verification. Neither extreme prevailed, and a sound formula of compromise was developed. This formula received authoritative expression in this country as early as the *Burr* trial. There are differences in phraseology, but *in substance it is agreed that the court must be satisfied from all the evidence and circumstances, and 'from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'* Hoffman v. United States*, 341 U.S. 479, 486–487 [71 S.Ct. 814, 95 L.Ed. 1118] (1951). *If the court is so satisfied, the claim of the privilege will be accepted without requiring further disclosure.*

"Regardless of how it is articulated, some like formula of compromise must be applied here. *Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.* Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case. *It*

*may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.* When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."

The Court judicially noticed that "this is a time of vigorous preparation for national defense, and that the desired information might jeopardize important military secrets." Moreover, said the Court, "it should be possible for respondents to adduce the essential facts as to causation (of the accident in suit) without resort to material touching upon military secrets. Respondents were given a reasonable opportunity to do just that, when petitioner formally offered to make the surviving crew members available for examination."

Then, the Court concluded with what from the standpoint of this case may be the most important paragraph in the decision. It was carefully emphasized that the Court was ruling on a civil case and that the opinion may not be fully applicable in a criminal case. This is what the Chief Justice said:

> "*Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented.*"

Then came Watergate and *United States v. Nixon, President of the United States,* (1974) 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, decided by a unanimous Supreme Court. If reminder of the issue is needed, it is provided by the syllabus which says:

> "Following indictment alleging violation of federal statutes by certain members of the White House and political supporters of the President, the Special Prosecutor filed a motion under Fed.Rule Crim.Proc. 17(c) for a subpoena duces tecum for the production before trial of certain tapes and documents relating to precisely identified conversations and meetings between the President and others. The President, claiming executive privilege, filed a motion to quash the subpoena."

Despite the usual rule that decision on a motion to quash a subpoena is not a final order subject to appeal, [See, *United States v. Ryan* (1971) 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85] the Court held that this order was appealable because:

> "... the traditional contempt avenue to immediate appeal is peculiarly inappropriate due to the unique setting in which the question arises. To require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government. Similarly, a federal judge should not be placed in the posture of issuing a citation to a President simply in order to invoke review. The issue whether a President can be cited for contempt could itself engender protracted litigation, and would further delay both review on the merits of his claim of privilege and the ultimate termination of the underlying criminal action for which his evidence is sought. These considerations lead us to conclude that the order of the District Court was an appealable order. The appeal from that order was therefore properly 'in' the Court of Appeals, and the case is now properly before this Court

on the writ of certiorari before judgment. 28 U.S.C. § 1254; 28 U.S.C. § 2101(e). *Gay v. Ruff,* 292 U.S. 25, 30 [54 S.Ct. 608, 78 L.Ed. 1099] (1934)."

Of course, in *Nixon,* it was the Special Prosecutor acting for the Attorney General who demanded compliance with the subpoena, while here the Deputy Attorney General takes the same position as did President Nixon. After disposing of a procedural argument that the subpoena should be quashed as oppressive under the provisions of Rule 17(c), Chief Justice Burger reached the executive privilege claim.

The opinion comments:

"With respect to many of the tapes, the Special Prosecutor offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time. As for the remainder of the tapes, the identity of the participants and the time and place of the conversations, taken in their total context, permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment."

As I have had occasion to say in earlier proceedings in this case, it is discouraging that the Department of Justice is blocking off the very testimony referred to by the Supreme Court in *Nixon.* Part of that testimony is prevented by the Deputy Attorney General's letters to essential witnesses and more of it is shut out by a refusal to grant the defendant limited "use immunity." However, I think that enough evidence has crept into the record to permit the inference applied in *Mammoth Oil Co. v. United States* (1927) 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137, and in *Sims v. Georgia* (1967) 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634. Moreover, I am unable to comprehend what the government has to lose by the grant of limited "use immunity" when that same immunity has been freely given co–defendants in this case. It must be remembered that Chief Justice Burger said in *Nixon,* "The very. integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." All of the facts are not going to be disclosed if the command of the Deputy Attorney General be honored and if the refusal to grant "use immunity" be continued. That is the argument as to need for public disclosure made by Special Prosecutor Jaworski in *Nixon,* and it is precisely the argument made by the defendant Feeney here. However, the position of the Department of Justice seems to depend upon whose ox is being gored.

*Nixon* discusses the President's claims of absolute privilege because of necessity of confidentiality of high–level communications and because of principles of separation of powers. The unanimous court rejected both of these claims, saying:

"However, neither the doctrine of separation of powers, nor the need for confidentiality of high–level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances. The President's need for complete candor and objectivity from advisers calls for great deference from the courts. However, when the privilege depends solely on the broad, undifferentiated claim of public interest in the confidentiality of such conversations, a confrontation with other values arises. *Absent a claim of need to protect military, diplomatic, or sensitive national security secrets,* we find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such material for *in camera* inspection with all the protection that a district court will be obliged to provide."

█ The Court said that great respect should be paid any Presidential claim of privilege, and I respect the Deputy Attorney General's claim. However, I do not forget that "the public ... has a right to every man's evidence, except for those persons protected by a constitutional, common law, or statutory privilege." *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626.

Chief Justice Burger said in *Nixon*:

"The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.' Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. *It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced* .... *The allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts.*"

President Nixon's motion to quash the subpoena was denied, but the trial judge was cautioned to proceed carefully to be sure that there was no unnecessary disclosure of confidential communications from and to the President. It was ordered that an in camera inspection be made of the subpoenaed material, and the government's brief in this case says it doesn't object to an in camera proceeding to be held by me in this case. However, as I think about it, the problem I face is different from that faced by the trial judge under the Supreme Court's opinion in *Nixon*. The government's claim in this case is not something I can decide by reviewing documents in camera. I have to pass on the propriety of a refusal to answer questions on cross–examination, and I don't know how there can be cross–examination without permitting someone to cross–examine. Nor do I know how the defendant can be deprived of his constitutional right to confront the witnesses who are testifying. I think that I must first decide whether the claim of privilege is essential to the interests of justice [I don't think that anyone is claiming that military secrets will be disclosed]. Unless I

make such a determination in an in camera hearing, I believe that criminal proceedings are open to the public. See, *United States v. Alberico* (1977) D.C.Colo., 453 F.Supp. 178.[1] That's what the Supreme Court said in *Richmond Newspapers, Inc. v. Commonwealth of Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and although I shall pay to the office and the person of the Deputy Attorney General the deference required of the trial judge in *Nixon*, I shall not abdicate my judicial responsibilities to him even though I recognize that until recently he was one of this country's outstanding United States District judges, and even though he and I once represented the same falsely accused defendant in a lawsuit. Unless I am convinced by the in camera testimony that the interests of justice demand secrecy, all or most of the testimony will have to be repeated in public, but a step by step procedure is going to have to be devised.

The cases I have reviewed aren't too definitive as to some of the exact procedures which should be followed, but some propositions are settled, and I detail them:

1. Mr. Levites and Mr. Doonan should not be and they cannot now be punished for refusing to testify in violation of Justice Department regulations [28 C.F.R. § 16.21 et seq.] reserving to ranking Justice Department officials the right to decide when claims of privilege should be made. *Boske v. Comingore*, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846, *Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.

2. When orders are issued under regulations similar to 28 C.F.R. § 16.21 et seq. it is necessary that the official who signed the order appear to explain to the court why disclosure should not be made. *Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.

1. The press reports that the same ruling was made just a few days ago as to Abscam tapes played to a jury.

3. "The privilege belongs to the government and must be asserted by it; it can neither be claimed nor waived by a third party." *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727.

4. "The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing, the privilege is designed to protect." *United States v. Reynolds, supra.*

5. To uphold privilege claims, it must appear that there is risk of disclosure of state or military secrets or that the interests of justice demand confidentiality. *United States v. Reynolds, supra.*

6. Upon demand of the government, some sort of an in camera hearing should be structured. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

7. The ultimate decision as to a right of secrecy is for the court and not for the executive branch. *United States v. Reynolds, supra*, and *United States v. Nixon, supra.*

8. The Deputy Attorney General who ordered that Justice Department employees not testify must appear to explain and justify his insistence on secrecy. He must satisfy the requirement of *United States v. Reynolds, supra*, that there has been "actual personal consideration by" him, and I believe that this requirement means that he must have a reasonable amount of personal knowledge of the surrounding facts and circumstances supporting the claim of executive privilege.

9. None of the other witnesses mentioned have any right to assert a claim of their own, and they appear as subordinates acting pursuant to the direction of the Deputy Attorney General.

10. John White is not a Justice Department employee and the Deputy Attorney General cannot limit or restrict his testimony under the provisions of the regulation.

With these prefatory determinations:–

■■■ 1. The motion of intervenor John White for a protective order was orally withdrawn today and he asked to get out of the case. He is now a party to the case and with its facts and circumstances in mind, I think that he should remain one. I have permitted intervention and Mr. White can present testimony, but he has no more right than does the public to examine the tapes possessed by defendant Feeney who was allowed to listen only to tapes of *conversations he or his attorney participated in.* If Mr. White claims that his voice or that the voice of an agent of his is recorded on any tape, he can listen to it, and he can offer any such tape in evidence.

■■■ 2. The motion of Philip B. Heymann to quash the subpoena served on him is denied. Without intimation on my part one way or the other as to the enforceability of 28 C.F.R. § 16.23(c), its requirements have been met, and Mr. Heymann has to respond to a subpoena served upon him just like any ordinary citizen must respond.

3. The Deputy Attorney General must appear to explain the consideration he has given to and to justify the directives he has given Justice Department employees pursuant to 28 C.F.R. § 16.23.

4. I ask that the government make available Martin McNamara, a former Assistant U.S. Attorney for the Southern District of New York even though he is not now a government employee.

■■■ 5. The witnesses Heymann, Levites and Doonan must appear, and any refusal to answer must be based on personal, individualized instructions given them by the Deputy Attorney General during the questioning. I do not think that the power to refuse to answer questions can be delegated to subordinates under instructions as flexible as those appearing in the Deputy Attorney General's letters to the witnesses. Under 28 C.F.R. § 16.21 et seq., and under

*United States ex rel. Touhy v. Ragen, supra*, it is only the officer who issues the instruction who can decide on the secrecy. The letters of instruction given the witnesses are so broad that an investigation of a theft of laundry would have to be kept secret, and the letter orders witnesses to refuse to testify to investigations which may well be being publicized by the Department's public relations section. To claim a right to issue such a sweeping order of secrecy in large part dependent upon the individualized decision of each witness contradicts the regulations which so narrowly limits the right to claim governmental secrecy. The letter of instruction cites *Touhy*, and it then orders that the witness exercise the discretion *Touhy* says can be denied to all except top officials. The letters try to give that which the regulation takes away. The Department of Justice can't have its cake and eat it too.

■ I acknowledge that the Supreme Court has said that the prosecution can insist on in camera consideration of matters it claims can be withheld from public scrutiny because of executive privilege. However, I remind that the Supreme Court has placed narrow limits on matters which can be withheld, even in a civil trial, and in *Reynolds* it warned as to what may have to happen in criminal cases. At the hearing I am about to set, testimony will commence in open court, but upon personal demand of the Deputy Attorney General, testimony he insists be denied public airing will be taken in camera preliminarily. Whether intervenor and his counsel and defendant and his counsel will be permitted to participate in the in camera hearing I shall decide after listening to argument. I have found no controlling authority, but I am troubled at the thought of doing anything in any lawsuit with only one party present. Following the in camera hearing [if a secret hearing is demanded by the Deputy Attorney General after his personal consideration of the necessity for holding part of a criminal trial in private] decision will be made as to how much, if any, of the confidential testimony will be ordered repeated in public.

■ As to the tapes held by the court which have not been received in evidence, I do not think that the originals have been played to any grand jury and the court has only copies, but, even if the originals were, and even if the court held the originals, I think that they represent "statements" made by Feeney as the word "statement" is defined in Rule 16, F.R.Cr.P., the latest amendment of 18 U.S.C. § 3500, and Rules 801 and 1001 of the Federal Rules of Evidence. I believe that the government could [and it did] use selected tapes in attempting to prove Mr. Feeney's guilt, and, because I believe that the government and Mr. Feeney are co-owners of the tapes, I think that he can offer any or all of the tapes he believes will be helpful to him in his present predicament. I think that there is co-ownership because of the circumstances under which the tapes were made. They came into being through the joint, cooperative efforts of the United States Attorney's Office for the Southern District of New York and Mr. Feeney, and I don't know why one of the co-adventurers has the exclusive right to control the product of the joint venture. I think the parties' rights are the same as the rights of parties to a mining grubstake. The only restriction I presently see which should be imposed on use of the tapes is exclusion of some or all of them when they are not admissible under the Federal Rules of Evidence, but if received, they are part of the record. I do not think that the other defendants or the intervenor can use the tapes because (a) they weren't in on the grubstake, and (b) they have no standing to offer evidence in a hearing the limited purpose of which is to decide whether Mr. Feeney should receive a court ordered judgment of acquittal or a new trial: or, if he receives neither, what his sentence should be. Under the same reasoning I shall make no *sua sponte* order of disclosure of the tapes.

Before concluding, I emphasize as strongly as I know how that nothing I have said should be construed as any indication on my part as to what I think has or has not been proven. Serious charges have been leveled

at public officials and public figures, but presentation of evidence which allegedly would support them has been obstinately resisted by unyielding pressures exerted by the Department of Justice, just as the Department of Justice has ordered that its employees refuse to testify to facts presumably within their knowledge. It surely can be argued that the Justice Department has evidenced a curious determination to keep the lid nailed down to prevent disclosure of facts I have heretofore said I believe to be relevant to sentencing and possibly to be relevant to guilt. I again urge that there be no compelled secrecy as to matters of public interest by utilization of 28 C.F.R. § 16.21 et seq. I again urge that Mr. Feeney be permitted to testify under the very limited benefits of "use immunity." It must be remembered that "use immunity" will not prevent his prosecution on any charges, whether it be prosecution in a retrial of this case or prosecution under the threatened 77–count indictment. The government has already been able to convict him in this case without using his own testimony, and it is difficult to believe that ability to convict on the threatened 77–count indictment stands on use of incriminating statements which may be testified to by Mr. Feeney in this sentencing hearing. Moreover, if Mr. Feeney lies under oath, he is subject to an additional prosecution for perjury. I can't grant the "use immunity." Only the Department of Justice can confer it, and the Department presently acts in these matters through Mr. Philip B. Heymann whose reluctance to permit the facts to be brought out has already been established on the record in this case. Why the "use immunity" is objected to so strongly by the Department of Justice has not been explained, and the Department's adamancy is singular in light of the entire record, including in that record the fact that "use immunity" and generous plea bargains have already been given three other participants in the scheme described in the Indictment.

If all of the testimony is taken in public, it may be that the charges will be shown to be as fanciful as tales of the Loch Ness Monster or the Abominable Snowman. On the other hand, it may be that this case deserves to rank with the trial of Aaron Burr (*United States v. Burr, supra*), the Teapot Dome Scandal (*United States v. Mammoth Oil, supra*), the U–2 spy plane (*United States v. Reynolds, supra*), and Watergate (*United States v. Nixon, supra*). Whether the facts fit those cases, I have been unable to find out, but as has been discussed in my opinions in this case, the principles of law announced in those cases are applicable here.

I hope that all of the facts can be developed in open court, under oath, subject to cross–examination, and they will be unless the government can somehow bring itself within the quite narrow boundaries of permitted governmental secrecy as set forth in *Reynolds* and *Nixon*. At least as of now, I am underwhelmed by the assertion that disgorging the truth will hamper some sort of undescribed 18–month–old "ongoing investigation."

This case is hereby set for an evidentiary hearing to commence at 8:00 o'clock a. m. in Courtroom C–502, United States Courthouse, Denver, Colorado, on Thursday, October 30, 1980, and to continue from day to day thereafter until its conclusion. The Deputy Attorney General, Philip B. Heymann, Raymond B. Levites and Thomas P. Doonan are ordered to be present. Intervenor John C. White is welcome to appear and testify if he wishes to, and his testimony can't be blocked under 28 C.F.R. § 16.21 et seq., because he isn't an employee of the Department of Justice. If defendant Feeney is granted "use immunity" he shall be present, but if he is not granted such immunity, because of the travel expense he would have to incur, his presence is optional with him. However, I understand and respect the importance of the positions held and the responsibilities of the position held by Mr. White. If the date and time are not convenient to them, at their request, I will hear their testimony on any date and at any hour before October 30, 1980. By this I mean that upon request I will hear it before, during or after normal court hours weekdays or over the weekend.