## UNITED STATES EX REL. TOUHY v. RAGEN, WARDEN, ET AL.

No. 83.   Argued November 27–28, 1950.—Decided February 26, 1951.

*Robert B. Johnstone* argued the cause for petitioner. With him on the brief were *Edward M. Burke* and *Howard B. Bryant.*

*Robert S. Erdahl* argued the cause for McSwain, respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney, Stanley M. Silverberg* and *Philip R. Monahan.*

MR. JUSTICE REED delivered the opinion of the Court.

This proceeding brings here the question of the right of a subordinate official of the Department of Justice of the United States to refuse to obey a subpoena *duces tecum* ordering production of papers of the Department in his possession. The refusal was based upon a regulation [1] issued by the Attorney General under 5 U. S. C. § 22.[2]

Petitioner, Roger Touhy, an inmate of the Illinois State penitentiary, instituted a habeas corpus proceeding in the United States District Court for the Northern District of Illinois against the warden, alleging he was restrained in violation of the Due Process Clause of the Federal

---

[1] Department of Justice Order No. 3229, filed May 2, 1946, 11 Fed. Reg. 4920, reads:

"Pursuant to authority vested in me by R.S. 161 U.S. Code, Title 5, Section 22), *It is hereby ordered:*

"All official files, documents, records and information in the offices of the Department of Justice, including the several offices of United States Attorneys, Federal Bureau of Investigation, United States Marshals, and Federal penal and correctional institutions, or in the custody or control of any officer or employee of the Department of Justice, are to be regarded as confidential. No officer or employee may permit the disclosure or use of the same for any purpose other than for the performance of his official duties, except in the discretion of the Attorney General, The Assistant to the Attorney General, or an Assistant Attorney General acting for him.

"Whenever a subpoena *duces tecum* is served to produce any of such files, documents, records or information, the officer or employee on whom such subpoena is served, unless otherwise expressly directed by the Attorney General, will appear in court in answer thereto and respectfully decline to produce the records specified there in, on the

Constitution. In the course of that proceeding a subpoena *duces tecum* was issued and served upon George R. McSwain, the agent in charge of the Federal Bureau of Investigation at Chicago, requiring the production of cer-

---

ground that the disclosure of such records is prohibited by this regulation."

Supplement No. 2 to that order, dated June 6, 1947, provides in part:

"TO ALL UNITED STATES ATTORNEYS

"PROCEDURE TO BE FOLLOWED UPON RECEIVING A SUBPOENA DUCES TECUM

"Whenever an officer or employee of the Department is served with a subpoena duces tecum to produce any official files, documents, records or information he should at once inform his superior officer of the requirement of the subpoena and ask for instructions from the Attorney General. If, in the opinion of the Attorney General, circumstances or conditions make it necessary to decline in the interest of public policy to furnish the information, the officer or employee on whom the subpoena is served will appear in court in answer thereto and courteously state to the court that he has consulted the Department of Justice and is acting in accordance with instructions of the Attorney General in refusing to produce the records. . . .

. . . . .

". . . It is not necessary to bring the required documents into the court room and on the witness stand when it is the intention of the officer or employee to comply with the subpoena by submitting the regulation of the Department (Order No. 3229) and explaining that he is not permitted to show the files. If questioned, the officer or employee should state that the material is at hand and can be submitted to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed. The records should be kept in the United States Attorney's office or some similar place of safe-keeping near the court room. Under no circumstances should the name of any confidential informant be divulged."

² "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

tain records which, petitioner Touhy claims, contained evidence establishing that his conviction was brought about by fraud.[3] At the hearing that considered the duty of submission of the subpoenaed papers, the U. S. Attorney made representations to the court and to opposing counsel as to how far the Attorney General was willing for his subordinates to go in the production of the subpoenaed papers. The suggestions were not accepted. Mr. McSwain was then placed upon the witness stand and ordered to bring in the papers. He personally declined to produce the records in these words:

> "I must respectfully advise the Court that under instructions to me by the Attorney General that I must respectfully decline to produce them, in accordance with Department Rule No. 3229."[4]

Thereupon, the judge found Mr. McSwain guilty of contempt of court in refusing to produce the records referred to in the subpoena and sentenced him to be committed to the custody of the Attorney General of the United States or his authorized representative until he obeyed the order of the court or was discharged by due process of law.

On appeal, the Court of Appeals reversed on the ground that Department of Justice Order No. 3229 was authorized by the statute and

> "confers upon the Department of Justice the privilege of refusing to produce unless there has been a waiver of such privilege." 180 F. 2d 321 at 327.

---

[3] The subpoena was also addressed to the Attorney General. There is no contention, however, that the Attorney General was personally served with the subpoena; nor did he appear. See Fed. Rules Civ. Proc., 45.

[4] We take this answer to refer to both the original Department of Justice Order No. 3229 and the supplement.

The court then considered whether or not the privilege of nondisclosure was waived. It quoted from Supplement No. 2 to Order No. 3229 this language:

"If questioned, the officer or employee should state that the material is at hand and can be submitted to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed. The records should be kept in the United States Attorney's office or some similar place of safekeeping near the court room. Under no circumstances should the name of any confidential informant be divulged." 180 F. 2d at 328.

The Court of Appeals said that "this language contemplates some circumstances when the material called for must be submitted 'to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed.' " The court found, however, that no such limited disclosure was requested but that Mr. McSwain was called upon "to produce all documents and material called for in the subpoena without limitation and that at no time was he questioned" as to his willingness to submit the papers for determination as to materiality and best public interests. Consequently, he was not guilty of contempt unless the law required the witness to make unlimited production. The court thought that, since this last would mean there was no privilege in the Department to refuse production, such a holding should not be made. It said:

"Submission could only have been required to the extent the privilege had been waived by the Attorney General and for the purpose and in the specific manner designated." 180 F. 2d at 328.

We granted certiorari, 340 U. S. 806, to determine the validity of the Department of Justice Order No. 3229.

Among the questions duly presented by the petition for certiorari was whether it is permissible for the Attorney General to make a conclusive determination not to produce records and whether his subordinates in accordance with the order may lawfully decline to produce them in response to a subpoena *duces tecum*.

We find it unnecessary, however, to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal. The Attorney General was not before the trial court. It is true that his subordinate, Mr. McSwain, acted in accordance with the Attorney General's instructions and a department order. But we limit our examination to what this record shows, to wit, a refusal by a subordinate of the Department of Justice to submit papers to the court in response to its subpoena *duces tecum* on the ground that the subordinate is prohibited from making such submission by his superior through Order No. 3229.[5] The validity of the superior's action is in issue only insofar as we must determine whether the Attorney General can validly withdraw from his subordinates the power to release department papers. Nor are we here concerned with the effect of a refusal to produce in a prosecution by the United States [6] or with

---

[5]Although in this record there are indications that the U. S. Attorney was willing to submit the papers to the judge alone for his determination as to their materiality, the judge refused to accept the papers for examination on that basis. There is also in the record indication that the U. S. Attorney thought of submitting the papers to the court and opposing counsel in chambers but changed his mind. For our conclusion none of these facts are material, as the final order adjudging Mr. McSwain guilty of contempt was based, as above indicated, on a refusal by Mr. McSwain to produce, as instructed by the Attorney General in accordance with Department Order No. 3229.

[6] Cf. *United States* v. *Andolschek*, 142 F. 2d 503.

the right of a custodian of government papers to refuse to produce them on the ground that they are state secrets [7] or that they would disclose the names of informants.[8]

We think that Order No. 3229 is valid and that Mr. McSwain in this case properly refused to produce these papers. We agree with the conclusion of the Court of Appeals that since Mr. McSwain was not questioned on his willingness to submit the material "to the court for determination as to its materiality to the case" and whether it should be disclosed, the issue of how far the Attorney General could or did waive any claimed privilege against disclosure is not material in this case.

Department of Justice Order No. 3229, note 1, *supra,* was promulgated under the authority of 5 U. S. C. § 22. That statute appears in its present form in Revised Statutes § 161, and consolidates several older statutes relating to individual departments. See, *e. g.,* 16 Stat. 163. When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious. Hence, it was appropriate for the Attorney General, pursuant to the authority given him by 5 U. S. C. § 22, to prescribe regulations not inconsistent with law for "the custody, use, and preservation of the records, papers, and property appertaining to" the Department of Justice, to promulgate Order 3229.

Petitioner challenges the validity of the issue of the order under a legal doctrine which makes the head of a department rather than a court the determinator of the admissibility of evidence. In support of his argument

---

[7] See Wigmore, Evidence (3d ed.), § 2378.

[8] See Wigmore, Evidence (3d ed.), § 2374.

that the Executive should not invade the Judicial sphere, petitioner cites Wigmore, Evidence (3d ed.), § 2379, and *Marbury* v. *Madison,* 1 Cranch 137. But under this record we are concerned only with the validity of Order No. 3229. The constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling.[9] We think Order No. 3229 is consistent with law. This case is ruled by *Boske* v. *Comingore,* 177 U. S. 459.[10]

That case concerned a collector of internal revenue adjudged in contempt for failing to file with his deposition copies of a distiller's reports in his possession as a subordinate officer of the Treasury. The information was needed in litigation in a state court to collect a state tax. The regulation upon which the collector relied for his refusal was of the same general character as Order No. 3229.[11] After referring to the constitutional authority for the enactment of R. S. § 161, the basis, as 5 U. S. C.

[9] *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549. For relatively recent consideration of the problem underlying governmental privilege against producing evidence, compare *Duncan* v. *Cammell, Laird & Co.,* [1942] A. C. 624, with *Robinson* v. *State of South Australia,* [1931] A. C. 704.

[10] That case has been generally followed. See, *e. g., Ex parte Sackett,* 74 F. 2d 922; *In re Valecia Condensed Milk Co.,* 240 F. 310; *Harwood* v. *McMurtry,* 22 F. Supp. 572; *Stegall* v. *Thurman,* 175 F. 813; *Walling* v. *Comet Carriers, Inc.,* 3 F. R. D. 442, 443.

[11] The following excerpts will show the similarity:

" 'Whenever such subpœnas shall have been served upon them, they will appear in court in answer thereto and respectfully decline to produce the records called for, on the ground of being prohibited therefrom by the regulations of this department. . . . In all cases where copies of documents or records are desired by or on behalf of parties to a suit, whether in a court of the United States or any other, such copies shall be furnished to the court only and on a rule of

§ 22, for the regulation now under consideration, this Court reached the question of whether the regulation centralizing in the Secretary of the Treasury the discretion to submit records voluntarily to the courts was inconsistent with law, p. 469. It concluded that the Secretary's reservation for his own determination of all matters of that character was lawful.

We see no material distinction between that case and this.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS are of the opinion the judgment of the District Court should be affirmed.

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

Issues of far-reaching importance that the Government deemed to be involved in this case are now expressly left undecided. But they are questions that lie near the judicial horizon. To avoid future misunderstanding, I deem it important to state my understanding of the opinion of the Court—what it decides and what it leaves wholly open—on the basis of which I concur in it.

---

the court upon the Secretary of the Treasury requesting the same. Whenever such rule of the court shall have been obtained collectors are directed to carefully prepare a copy of the record or document containing the information called for and send it to this office, whereupon it will be transmitted to the Secretary of the Treasury with a request for its authentication, under the seal of the department, and transmission to the judge of the court calling for it, unless it should be found that circumstances or conditions exist which makes it necessary to decline, in the interest of the public service, to furnish such a copy.'" 177 U. S. 461.

"This case," the Court holds, "is ruled" by *Boske* v. *Comingore*, 177 U. S. 459. I agree. *Boske* v. *Comingore* decided that the Secretary of the Treasury was authorized, as a matter of internal administration in his Department, to require that his subordinates decline to produce Treasury records in their possession. In the case before us production of documents belonging to the Department of Justice was declined by virtue of an order of the Attorney General instructing his subordinates not to produce certain documents. The authority of the Attorney General to make such a regulation for the internal conduct of the Department of Justice is not less than the power of the Secretary of the Treasury to promulgate the order upheld in *Boske* v. *Comingore, supra.*

But in holding that that decision rules this, the context of the earlier decision and the qualifications which that context implies become important. The regulation in *Boske* v. *Comingore* provided: (1) that collectors should under no circumstances disclose tax reports or produce them in court, and (2) that reports could be obtained only "on a rule of the court upon the Secretary of the Treasury." 177 U. S. at 460–461. The regulation also stated that the reports would be disclosed by the Secretary of the Treasury "unless it should be found that circumstances or conditions exist which makes it necessary to decline, in the interest of the public service, to furnish such a copy." *Ibid.* This portion of the regulation was not in issue, however, for the Court was considering the failure of the collector to produce, not the failure of the Secretary of the Treasury. This is emphasized by the Government's suggestion that:

> "[I]f the reports themselves were to be used this could be secured by a subpœna duces tecum to the head of the Treasury Department, or someone under his direction, who would produce the original papers

themselves in court for introduction as evidence in the trial of the cause." Brief for Appellee, p. 49, *Boske* v. *Comingore, supra.*

And the decision was strictly confined to the narrow issue before the Court. It is epitomized in the concluding paragraph of the *Boske* opinion:

"In our opinion the Secretary, under the regulations as to the custody, use and preservation of the records, papers and property appertaining to the business of his Department, may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character." 177 U. S. at 470.

There is not a hint in the *Boske* opinion that the Government can shut off an appropriate judicial demand for such papers.

I wholly agree with what is now decided insofar as it finds that whether, when and how the Attorney General himself can be granted an immunity from the duty to disclose information contained in documents within his possession that are relevant to a judicial proceeding are matters not here for adjudication. Therefore, not one of these questions is impliedly affected by the very narrow ruling on which the present decision rests. Specifically, the decision and opinion in this case cannot afford a basis for a future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached. In joining the Court's opinion I assume the contrary—that the Attorney General can be reached by legal process.

Though he may be so reached, what disclosures he may be compelled to make is another matter. It will of course be open to him to raise those issues of privilege from testimonial compulsion which the Court rightly holds are not before us now. But unless the Attorney General's amenability to process is impliedly recognized we should candidly face the issue of the immunity pertaining to the information which is here sought. To hold now that the Attorney General is empowered to forbid his subordinates, though within a court's jurisdiction, to produce documents and to hold later that the Attorney General himself cannot in any event be procedurally reached would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle.