NORRIS, Circuit Judge,
dissenting:
I disagree with the majority that this case is controlled by Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), because I believe that the disclosure regulation upon which investigator Llórente relied waived his immunity from testimonial compulsion with respect to matters of fact. Accordingly, although I agree that the contempt action was removable under 28 U.S.C. § 1442(a)(1), I disagree that sovereign immunity deprived the state court of jurisdiction to compel fact testimony consistent with the regulation or that, as a consequence, the district court on removal lacked derivative jurisdiction to adjudicate the merits of the contempt. The district court should be required to decide on remand which, if any, questions Llórente was required to answer because they called for factual testimony within the meaning of 49 C.F.R. § 835.3(b) (1984).
In Touhy, the regulation upon which the federal agent based his refusal to produce subpoenaed documents left the decision whether to permit or forbid production to the discretion of his superior officer. Ex Parte Sackett, 74 F.2d 922 (9th Cir.1935), the circuit precedent on which the majority also relies, involved a regulation that categorically prohibited disclosure of confidential public materials for use in private litigation. See also Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900) (disclosure permitted only at the direction of the department head); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (same). Here, to the contrary, 8 C.F.R. § 835.3 embodies an explicit, particularized standard binding on NTSB investigators once, as happened here, they receive the Board’s conditional authorization pursuant to 49 C.F.R. § 835.6(a) to testify in private litigation. The Board’s authorization is conditional because section 835.3 permits investigators to testify “as to the factual information they obtained during the course of the accident investigation” but prohibits testimony exceeding “the scope of their investigation” and “opinion testimony concerning the cause of the accident.” 8 C.F.R. § 835.3(b). Accordingly, whereas Touhy involved a nondisclosure regulation that reserved complete discretion to the Attorney General, the NTSB regulation prescribes a determinate, uniform standard for the guidance of litigants, *1453 Board personnel and the courts.[1] Because the distinction is critical to the question of whether the regulation constituted a partial waiver of sovereign immunity, I believe the majority is incorrect in holding that this case is controlled by Touhy.
Although I appreciate the Hobson’s choice into which Llórente was boxed by the chairman’s letter, the state court was entitled to enforce the regulation, rather than defer to the letter. If the state court misinterpreted the regulation, Llorente’s remedy was to invoke his right of immediate removal to a federal forum to correct the error. Now that he has exercised this remedy, the district court should assume jurisdiction and address the merits.

. Nor is the prescriptive nature of the NTSB regulation changed by the Board chairman’s attempt to supplement it with a specific ad hoc directive to Llórente forbidding him from testifying to the "informal analytical conversations” he held with the manufacturer’s representative at the accident site. In Touhy, the Attorney General’s specific directive not to disclose the subpoenaed documents was consistent with the regulation, which contemplated that the department head would give or withhold consent every time that the Department of Justice received a request for documents in its possession. Here, the regulation vested no such right of ad hoc consent in the NTSB chairman but provided that, once the General Counsel granted a private party's request for deposition testimony, the deposition should go forward with respect to matters of fact. When the NTSB granted the plaintiffs request to depose Llórente, it forfeited its one chance to obviate delicate disclosures by preempting deposition testimony. Thereafter, the Board had to rely on either the state court’s or the removal court’s faithful interpretation of the fact/opinion dichotomy embodied in its validly promulgated regulations.