In re **U.S. BIOSCIENCE SECURITIES LITIGATION.**

Civ. A. No. 92–678.

United States District Court,
E.D. Pennsylvania.

May 20, 1993.

Sherrie R. Savett, Stuart H. Savett, Toby P. Camen, P.C., Barbara A. Podell, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, for Douglas Simmons, Jill Simmons, David Jaroslawicz.

John J. Soroko, Duane, Morris & Heckscher, Henry T. Reath, Philadelphia, PA, Richard Ben–Veniste, Weil, Gotshal & Manges, Washington, DC, for Philip S. Schein, U.S. Bioscience Inc.

Lois W. Davis, Asst. U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Civil Div., Philadelphia, PA, for U.S.

Richard Ben–Veniste, Weil, Gotshal & Manges, Washington, DC, for Maxwell Gordon, PH.D., Allen Misher, PH.D., Patrick J. McCarty, Jonah Shacknai, Barbara J. Scheffler, Paul Davignon, John Toy, PH.D., Robert I. Kriebel and Dr. William McCulloch.

### MEMORANDUM

DALZELL, District Judge.

This class action involves alleged securities laws violations in connection with securities of U.S. Bioscience, Inc. ("Bioscience"), a cor-

poration whose common stock is traded on the American Stock Exchange. On November 10, 1992, we certified a class of all individuals who purchased Bioscience common stock or call options, or sold put options, from April 12, 1991 through January 31, 1992.

In essence, these twenty-six consolidated actions allege in their Revised Consolidated Complaint that representatives of Bioscience made false and misleading statements about the prospects for the approval of its chemotherapy and radiation therapy protective agent, Ethyol, and, most importantly, Ethyol's prospects for approval by the United States Food and Drug Administration ("FDA"). Far from granting early approval to Ethyol, as had been hoped, an Advisory Committee of the FDA late on January 31, 1992, rejected the drug for prompt human use because, according to the complaint, "The clinical trials required by the FDA failed to demonstrate statistically significant evidence of the efficacy of Ethyol" (Complaint ¶ 6).

On the next day of trading on the American Stock Exchange, Bioscience fell $16 per share, resulting in a loss of market capitalization of over $320 million in a matter of hours.

*Procedural Background*

In the course of discovery, plaintiffs have sought to obtain certain information from three individuals who work at the FDA, Kathleen Downs and Drs. Gerald H. Sokol and Stanley Lin. Pursuant to the FDA's regulation, 21 C.F.R. § 20.1, plaintiffs' counsel requested of Dr. David Kessler, the FDA's Commissioner, "to compel through subpoena oral testimony of" Dr. Sokol and Ms. Downs. In addition, on the same day Dr. Kessler received subpoenas that were not yet served on these two individuals.

1. By this time Dr. Lin's involvement had surfaced, and plaintiffs' counsel made no new request of Commissioner Kessler regarding Dr. Lin because of its by-then obvious futility.

2. § 20.1 Testimony by Food and Drug Administration employees.
  (a) No officer or employee of the Food and Drug Administration or of any other office or establishment in the Department of Health

On March 12, 1993, the FDA refused this request. On or about April 6, 1993, plaintiffs' counsel served the subpoenas on the three [1] individuals, calling upon them to appear for depositions on April 22, April 26, and April 28, and to produce and permit inspection of the deponents' "file(s) relating to U.S. Bioscience's application for approval of Ethyol in the period 1990 through June 1992".

In response, the United States of America, on behalf of these three FDA employees, on April 21 filed a motion to quash the subpoenas. Plaintiffs responded to that opposition on May 17, and for the reasons that follow we will only grant in part the Government's motion to quash.

*Legal Analysis*

█ The Government has argued, in its memorandum in support of its motion to quash, that the "FDA's long-standing policy, codified in the agency's regulations at 21 C.F.R. § 20.1, is to refuse to make agency employees available to testify in litigation to which the government is not a party." Memorandum in support of motion to quash subpoena at 2. The Government adds that "An exception to this policy is made only if the testimony is in the public interest and promotes the statutory mission of the FDA." *Id.*

The FDA regulation in question was adopted pursuant to the so-called federal Housekeeping Statute, 5 U.S.C. § 301, which provides, in relevant part, that:

The head of an Executive department ... may prescribe regulations for the ... conduct of its employees ... and the custody, use, and preservation of its records, papers and property.

The FDA's regulation is set forth, in relevant part, in the margin [2]. The critical lan-

and Human Services, except as authorized by the Commissioner of Food and Drugs pursuant to this section or in the discharge of his official duties under the laws administered by the Food and Drug Administration, shall give any testimony before any tribunal pertaining to any function of the Food and Drug Administration or with respect to any information acquired in the discharge of his official duties.

guage of the regulation is that the Commissioner will permit the testimony of an FDA employee if "such testimony will be in the public interest and will promote the objectives of the [FDA] act and the agency". 21 C.F.R. § 20.1(c). Unsurprisingly, such "housekeeping" regulations as 21 C.F.R. § 20.1 have received judicial approval. *See, e.g., United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 468, 71 S.Ct. 416, 419, 95 L.Ed. 417 (1951).

Plaintiffs' counsel do not quibble with the legitimacy, as a general proposition, of the FDA's regulation. They take sharp issue, however, with the Commissioner's appraisal of the "public interest" involved here. While we agree with the FDA that, as a general proposition, its·employees should be protected "concerning testimony in private lawsuits", we believe the FDA's March 12, 1993 *pro forma* response to plaintiffs' request caricatures the nature of the instant litigation by referring to it as merely "private lawsuits."

The Supreme Court takes a more positive view of the "public interest" served by litigation like this one:

> Moreover, we repeatedly have emphasized that implied private actions provide "a most effective weapon in the enforcement" of the securities laws and are "a necessary supplement to [Securities and Exchange] Commission action."

*Bateman Eichler, Hill, Richards, Inc. v. Berner,* 472 U.S. 299, 310, 105 S.Ct. 2622, 2629, 86 L.Ed.2d 215 (1985), quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).

While it is certainly true that these actions involve claims by shareholders of U.S. Bioscience, all private citizens, for large losses they have incurred, it is also true that the interests they seek to vindicate are those that Congress has regarded as very much in the federal public interest. *See, e.g., Bateman Eichler, supra.* Put another way, the "public interest" does not exist in a vacuum, isolated at the FDA's offices in Rockville, Maryland. The "public interest" also includes the Congressionally-mandated assurance of the integrity of the public securities markets that are so crucial to the nation's economic well-being. That issue is most assuredly involved here.

Further, the heart of plaintiffs' claims here is that Bioscience representatives misrepresented what was said to them by FDA employees. The FDA certainly has an interest in preventing misrepresentations about its approval process, and in assuring the truthfulness of representations, to the public by public companies, about the efficacy of drugs for which FDA approval has been sought.

It also seems to us critical, in vindicating the public interests that collide here, that the three FDA employees are the *only* independent sources for discovery and evidence on this crucial issue. The Bioscience representatives who were part of communications with these three FDA employees have told, or will tell, their story in depositions and at trial. In order to confirm the completeness and truthfulness of those accounts, the only possible test available to plaintiffs is to depose the FDA participants in those interchanges.

It also has not escaped our attention that defendant Scheffler of Bioscience apparently made at least two calls to Ms. Downs, on February 5 and February 7, 1992, requesting Ms. Downs's notes of telephone conversa-

---

(b) Whenever a subpoena, in appropriate form, has been lawfully served upon an officer or employee of the Food and Drug Administration commanding the giving of any testimony, such officer or employee shall, unless otherwise authorized by the Commissioner, appear in response thereto and respectfully decline to testify on the grounds that it is prohibited by this section.

(c) A person who desires testimony from any employee may make written request therefor, verified by oath, directed to the Commissioner setting forth his interest in the matter sought to be disclosed and designating the use to which such testimony will be put in the event of compliance with such request: ... If it is determined by the Commissioner, or any other officer or employee of the Food and Drug Administration whom he may designate to act on his behalf for the purpose, that such testimony will be in the public interest and will promote the objectives of the act and the agency, the request may be granted. Where a request for testimony is granted, one or more employees of the Food and Drug Administration may be designated to appear, in response to a subpoena, and testify with respect thereto.

tions. Ms. Downs seems to have had no difficulty complying with the request, and apparently did not think the matter important enough to bring to Commissioner Kessler's attention (*see* Exhibits D and E attached to plaintiffs' memorandum in opposition to the Government's motion). Such informal, one-way disclosure is, obviously, inconsistent with the FDA's own regulation.

■ We agree with the FDA, however, that the subpoenas, as served, are too broad. We will therefore grant the motion to the extent that it seeks a general inquiry and documents "relating to U.S. Bioscience's application for approval of Ethyol in the period 1990 through June 1992". We shall, however, deny the motion insofar as it seeks to prevent depositions, and allow the three FDA employees to be examined on communications they had, directly or indirectly, with any representative of Bioscience regarding Ethyol. They shall also produce for inspection any documents pertaining to this subject. So constricted, we cannot imagine these depositions each taking more than four hours. We shall therefore permit the depositions to take place for each of the three individuals, for a total period not to exceed twelve hours of examination, on the issues delineated herein.

An appropriate Order follows.

### ORDER

AND NOW, this 20th day of May, 1993, upon consideration of the motion of the United States of America to quash subpoena issued to Food and Drug Administration employees Kathleen Downs, Dr. Gerald H. Sokol and Dr. Stanley Lin, plaintiffs' opposition thereto, and for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that:

1. The motion is GRANTED IN PART and DENIED IN PART;

2. To the extent that the subpoenas dated April 6, 1993 seek all files relating to U.S. Biosciences' "application for approval of Ethyol in the period 1990 through June 1992", the motion is GRANTED except to the extent of any documents in the possession of the three individuals that relate to communi-

cations with any representative of U.S. Bioscience;

3. To the extent the subpoenas seek the oral testimony of these three individuals relating to their communications with representatives of U.S. Bioscience, the motion is DENIED and the United States of America shall produce Drs. Sokol and Lin and Ms. Downs for the purpose of giving oral deposition testimony, not to exceed four hours' each, to be scheduled at mutually convenient times no later than twenty days from the date of this Order, at the FDA's offices in Rockville, Maryland.