18-1563-cv
*Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand nineteen.

PRESENT:    JOHN M. WALKER, JR.,
            JOSÉ A. CABRANES,
            PETER W. HALL,
                    *Circuit Judges.*

_____

STARR INDEMNITY & LIABILITY COMPANY, AS
SUBROGOR OF ALL RIGHTS OF GENESIS MARINE,
LLC,

                    *Plaintiff-Appellant,*                          18-1563-cv

                    v.

WATER QUALITY INSURANCE SYNDICATE,

                    *Defendant-Appellee.*

_____

**FOR PLAINTIFF-APPELLANT:**                    GUERRIC S.D.L. RUSSELL, Nicoletti
                                                Hornig & Sweeney, New York, NY.

**FOR DEFENDANT-APPELLEE:**                    JOHN M. WOODS (Corey R. Greenwald, *on the brief*), Clyde & Co US LLP, New York, NY.

Appeal from an April 25, 2018 judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Starr Indemnity & Liability Company ("Starr") appeals from a final judgment entered in favor of Defendant-Appellee Water Quality Insurance Syndicate ("WQIS") following a three-day bench trial.

In April 2014, two oil barges owned and operated by Genesis Marine LLC ("Genesis") ran aground in the Mississippi River. Genesis designated T&T Salvage LLC ("T&T") to oversee lightering and salvage operations for the grounded barges. The barges were successfully lightered and refloated without incident.

Genesis was insured under several insurance policies, including Starr's "Hull & Machinery" and "Protection & Indemnity" policies, and WQIS's pollution liability policy. Both Starr and WQIS disclaimed coverage for the costs incurred by T&T during the lightering and salvage operations. Eventually, however, Starr agreed to pay the T&T costs in exchange for the assignment of all of Genesis's claims against WQIS. Starr then brought this subrogation action against WQIS to recover the T&T costs. The only issue at trial was which insurer is liable for the T&T costs.

In a thorough and well-reasoned forty-six-page Opinion and Order, Judge Engelmayer concluded that WQIS is not liable to Starr for the T&T costs because two necessary conditions for coverage under the WQIS pollution liability policy had not been satisfied: (1) the barges' grounding never posed a "substantial threat of discharge" under the Oil Pollution Act of 1990 ("OPA 90"); and (2) the lightering and salvage costs were not incurred to mitigate a perceived threat of discharge.

We assume the parties' familiarity with the remaining underlying facts, the procedural history of the case, and the issues on appeal.

**I.**

"We review findings of fact after a bench trial for clear error and accompanying conclusions of law *de novo*." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 527 (2d Cir. 2018). "Mixed questions of law and fact are reviewed either *de novo* or under the clearly erroneous standard,

2

depending on whether the question is predominantly legal or predominantly factual." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (internal quotation marks and brackets omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (internal quotation marks omitted). As trier of fact, the district court is entitled "to believe some parts and disbelieve other parts of the testimony of any given witness." *Id.* (internal quotation mark omitted). Further, "[w]e are not allowed to second-guess the bench-trial court's credibility assessments." *Id.*; *see also United States v. Murphy*, 703 F.3d 182, 189 (2d Cir. 2012) ("When . . . credibility determinations are at issue, we give particularly strong deference to a district court finding.").

## II.

Starr principally disputes the District Court's finding that the barges' grounding never posed a substantial threat of discharge. Starr maintains that the United States Coast Guard believed the barges posed a substantial threat of discharge, and that any finding to the contrary is thereby erroneous. We identify no error—much less clear error—in the District Court's conclusions that the Coast Guard made no such "substantial threat" determination and that the grounded barges never presented a substantial threat of oil discharge.

### A. The Coast Guard never determined that the barges presented a substantial threat of discharge.

Starr relies almost exclusively on the testimony of Chief Petty Officer Heather Norman ("Officer Norman") as evidence of the Coast Guard's alleged determination that the barges posed a substantial threat of discharge. In a written affidavit, Officer Norman opined that "the barges presented a substantial threat of oil discharge," App. 919 ¶ 34, and that the Coast Guard "considered [there to be] a substantial threat of discharge so long as the barges remained grounded with residual oil onboard," *id.* at 913–14 ¶ 16.[1] According to Starr, the District Court was not

---

[1] Pursuant to 5 U.S.C. § 301, the head of an executive department may prescribe regulations that place limits on how employees can disseminate information gained in the performance of their official duties. These regulations are generally referred to as *Tuohy* regulations. *See generally United States ex rel. Tuohy v. Ragen*, 340 U.S. 462 (1951); *see also* 6 C.F.R. §§ 5.41–5.49 (Department of Homeland Security *Tuohy* regulations). In the present case, the Office of the General Counsel of the Department of Homeland Security would not allow the Coast Guard to produce a witness for deposition; instead, the Coast Guard would only respond in writing to fifteen questions from each party—with each party to identify ten "direct examination" questions and, after seeing its adversary's ten direct questions, five further "cross examination" questions. The parties consented to this procedure.

entitled to reject or otherwise discredit Officer Norman's testimony; instead, the District Court was required to accord *Chevron* deference to Officer Norman's testimony because it constitutes the Coast Guard's expert interpretation of its own regulations.[2] We disagree.

Officer Norman's testimony is not entitled to *Chevron* deference simply by virtue of the fact that Officer Norman is a Coast Guard officer. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (holding that an agency's interpretation of a statutory provision is entitled to *Chevron* deference when it is promulgated in a form that carries "the force of law," such as a regulation promulgated pursuant to notice-and-comment rulemaking). The District Court was entitled to assess the credibility of her testimony as it would that of any other witness testimony.

The District Court provided several reasons to discredit Officer Norman's testimony that the Coast Guard determined that the grounded barges presented a substantial threat of discharge. First, due to the strictures imposed by the Coast Guard on Officer Norman's deposition, neither party's counsel could probe the factual basis of Officer Norman's testimony or subject her testimony to robust cross and re-direct examination. Second, Officer Norman's testimony was uncorroborated and, in fact, largely contradicted by the trial record and by other credible witness testimony. Indeed, after surveying the documentary evidence and assessing the credibility of all the witnesses, the District Court concluded that the "trial record is devoid of any contemporaneous documentation of . . . an expressed concern [about discharge] by the Coast Guard." SPA 22.

On appeal, Starr identifies several items of evidence that allegedly corroborate Officer Norman's testimony. But the District Court considered this "corroborating" evidence, and nevertheless concluded that "the Coast Guard did not assess, and its actions were not consistent with or prompted by a real-time assessment, that the barges posed a substantial threat of the discharge of oil." *Id.* at 18. As we have previously stated, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Krist*, 688 F.3d at 95. Accordingly, we find no clear error in the District Court's credibility assessment of Officer Norman's testimony or in its broader conclusion that the Coast Guard did not believe the barges presented a substantial threat of discharge. Finally, because the District Court did not err in concluding that there was no "substantial threat" determination by the Coast Guard, it could not have erred in failing to accord deference—*Chevron* or otherwise—to a non-existent determination.

---

[2] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). *Chevron* has no applicability here because the agency witness was not interpreting a statute but making an evidentiary fact statement (which the District Court rejected).

**B. The grounded barges never posed a substantial threat of discharge.**

Starr contends that even if the Coast Guard made no such official determination, the barges' grounding still presented a substantial threat of discharge such that Genesis would have incurred OPA 90 liability had it not acted voluntarily to salvage the barges. This argument turns, of course, on whether the barges in fact posed a substantial threat of discharge, which is a predominantly factual inquiry. Again, we find no error in Judge Engelmayer's careful assessment of the trial record or in his ultimate conclusion that the barges' grounding never presented a substantial threat of discharge.

**III.**

The fact that the barges never posed a substantial threat of discharge does not entirely dispose of all of Starr's subrogation claims against WQIS. As the District Court recognized, under Subsection A(7)(a) of the WQIS policy,[3] WQIS could be liable for some of the T&T costs if Genesis incurred these expenses to mitigate or prevent a threat of discharge that it mistakenly viewed as substantial. In its Opinion and Order, the District Court unequivocally disclaimed this possibility: "Genesis and its agents did not lighter the barges . . . to mitigate even a perceived threat of discharge" SPA 42.

On appeal, Starr relies principally on the testimony of T&T Manager Deeann Ebanks ("Ebanks") as evidence that the T&T costs were incurred to prevent or mitigate a perceived threat of discharge. Ebanks, when asked whether the main purpose of lightering the barges was to "remove the threat of pollution," responded: "Yes. To remove the hydrocarbons . . . [t]he OPA 90 cargo. To get the cargo off." App. 1113. Ebanks' statement is susceptible to more than one plausible interpretation and does not preclude the possibility that the OPA 90 cargo was removed in order to lighten the barges and dislodge them from the strand. Accordingly, we will not disturb the District Court's construction of Ebanks' testimony or its conclusion that Genesis and its agents did not lighter the barges to mitigate a perceived threat of discharge.

---

[3] Subsection A(7)(a) of the WQIS policy provides coverage for:

> Costs and expenses incurred by [Genesis] for firefighting, salvage or removal of wreck or debris of any Vessel(s) or cargo carried aboard any such Vessel(s), to the extent that such actions were undertaken for the purpose of stopping a discharge or release, or mitigating or preventing a substantial threat of a discharge under OPA . . . .

App. 72 (emphasis omitted).

## IV.

In a last-ditch effort to salvage its case, Starr attempts to argue that there were two concurrent causes of loss—the barges' grounding and the need to mitigate a threat of pollution—and that the expenses attributable to each of these causes must be allocated accordingly. Starr is fundamentally mistaken. There is only one cause of loss in this case: the barges' grounding. Any consequent need to mitigate pollution is just that—a potential *consequence* of the loss, not a cause. This argument therefore fails.

## CONCLUSION

We have reviewed all of the remaining arguments raised by Starr on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the April 25, 2018 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6