**Affirm and Opinion Filed July 18, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-01094-CR
### No. 05-22-01095-CR

## JON RUSSELL WHITSON, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the 443rd District Court
### Ellis County, Texas
### Trial Court Cause Nos. 46632CR & 46633CR

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Smith
Opinion by Justice Molberg

Appellant Jon Russell Whitson pleaded guilty to promotion of child pornography in trial court cause number 46632CR and ten counts of possession of child pornography in trial court cause number 46633CR. The jury assessed punishment at twenty years' confinement for promotion of child pornography, two years for each of the first three counts of possession, and four years for each of possession counts four through ten.[1] On appeal, appellant contends the trial court

---

[1] The first possession sentence was ordered to begin when the promotion sentence ended, while counts two and three were ordered to run concurrently with the promotion sentence. The final

abused its discretion when it limited the cross-examination of one of the State's witnesses pursuant to a *Touhy*[2] letter and violated his rights under the Confrontation Clause. For the reasons explained below, we affirm in this memorandum opinion.

## Background

After appellant pleaded guilty, a punishment trial before the jury was held. Detective Elizabeth Glidewell of the Waxahachie Police Department testified she secured search warrants for Internet service provider Charter Communications and Instagram after receiving a child pornography tip. She determined appellant was the subscriber attached to the IP address and accounts in question. Glidewell received 680 pages of records, and they included images of child pornography. She testified, among other things, she determined appellant had conversations with other Instagram users in which he asked them how old they were. He continued conversations with users who responded they were thirteen or fourteen years old. In one such conversation, the other user asked him to support her by donating, and appellant responded, "How special are the pics?" He received an image of child pornography in response. He responded, "Maybe some extra special ones?" In

---

seven possession sentences were ordered to begin when the sentence in the first count ceased to operate. Additionally, the final seven possession counts' sentences of confinement were suspended, and appellant would be placed on community supervision for ten years.

[2] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (reversing contempt order against FBI agent who had refused, under instructions from U.S. Attorney General, to produce certain records called for in a subpoena duces tecum, and holding that federal agency heads are authorized by law to prescribe regulations and it is appropriate for them to exercise that authority to limit release of official information).

another conversation, appellant asked for a sample of what he would be buying, he negotiated a price, and he purchased multiple images of child pornography. In another, a user stated she would sell ten images for $20 or twenty for $30 and said, "Me masturbating playing with tits and ass." Appellant responded, "What if I wanna be generous because you're so cute and do 50?" Appellant asked the same user, "You really 13?" When she responded affirmatively, appellant said, "Damn, def got me going a lot." In another conversation, someone asked appellant "the youngest age he liked." Appellant responded, "10 to 14" but a few seconds later stated, "Well, 8 to 14, lol." The State published to the jury ten images obtained from appellant's Instagram account, and Glidewell affirmed that each image contained child pornography.

After receiving these records, Glidewell secured a search warrant for appellant's home, where she discovered and seized appellant's phone. She also spoke with appellant and learned he had created a new Instagram account, and she again secured a warrant and obtained records from this account.

In one conversation found in those records, appellant asked a user, "What do you need baby girl?" The user responded, "X-box card." Appellant stated, "And in return?" She said, "25 for 4 pics, 50 for pics and videos, 100 for video chat for 30 minutes." He said, "Give me a little bit and I'll get you that $50 code." After receiving two images, appellant told the user, "No way you're the age you say." She responded she was about to be fourteen. Appellant said, "Damn." In a conversation

with another Instagram user, appellant sent an image of child pornography and told the user the child in the image was fourteen years old. In another conversation, appellant told a user he believed they liked the same type of things, "plus I have a real-life story." He told the user that when he was seventeen and his sister was thirteen, she "came and sat in my lap one day and started grinding on me and I got hard, and she got really wet and let me finger her." The user shared that he "remember[ed] cumming on my goddaughter's volleyball shorts and panties when she was 14." Appellant responded, "Yummy!" and then shared that he had "done that to my daughter and she wore them all wet too." He said his daughter was thirteen and had "the cutest butt too." Appellant said he had a "pic of her in the shower" and then sent an image. Glidewell testified she confirmed the child in the image was not, in fact, appellant's daughter. Appellant asked yet another Instagram user whether the user takes his or her own pictures. The user responded, "Yes, I do usually while I'm working," and later, "There is a gym next door and I'm hoping it picks up soon now that it's reopened. A lot of nice sites come from there." Appellant responded, "Younger the better always." To another user, appellant said, "I'll show you my sister, lol, I snuck a pic"—"she was in the shower too." Appellant sent the user the same shower image he previously had falsely identified as his daughter to another user.

Glidewell testified on cross-examination that, among other things, she had no knowledge appellant had "ever sexually touched any child" and that, in particular,

—4—

appellant's children had not made any outcry of sexual abuse. She set up forensic interviews for the children, and none of them reported sexual abuse. Glidewell agreed that the crimes to which appellant pleaded guilty were "online crimes" and "fantasy." Glidewell said her investigation showed appellant believed he was communicating with children younger than seventeen years old, but she was unable "to fully identify the children he was talking to" and had no concrete evidence the people he communicated with were really the ages they stated they were.

Glidewell also testified that appellant did not take any of the photographs or videos in question and he did not make any of the child pornography. On redirect, she agreed she did not know who took any of the pictures appellant exchanged on Instagram.

Elisa Del Valle, a computer forensic analyst with the U.S. Department of Homeland Security, testified within the limits provided in a U.S. Department of Homeland Security *Touhy* letter provided to the court and admitted in evidence. According to the letter, she was authorized to discuss (1) her background, training, experience, and qualifications as a computer forensics analyst; (2) identification of the phone involved in the case and its chain of custody; (3) the process used to access, extract, and examine the phone; (4) identification of records and materials retrieved from the phone; (5) identification and explanation of any forensic reports she generated from the examination; and (6) her interactions with other law enforcement officers during the course of the investigation and the exchange of

investigative information. Del Valle was "not to answer any questions asked beyond the scope authorized" in the letter and was specifically prohibited from discussing "the existence of any ongoing investigations" and "the identity of any other individuals who are the targets of any ongoing [Homeland Security] criminal investigations." The letter also observed, "As defense counsel failed to seek any *Touhy* authorization, they are not permitted to venture beyond the scope of questions asked by the prosecutor on direct examination."

Before Del Valle testified, defense counsel argued to the trial court he was concerned the limitations would prohibit appellant from exercising his Sixth Amendment confrontation right to ask whether the federal government was investigating who the "actual creators of these photos and videos are." He argued such a line of questioning was important to the defense to differentiate between the creation of pornography and its possession, and to deflect anger from appellant to those with culpability in their creation. Counsel stated he thought "more consideration to who [appellant] is may be given if they understand that the creators of these horrific images are being investigated by the federal government." The State responded by arguing that, among other things, there had been "no impression left by us or by the detective or by anyone that he created these things." The trial court asked Del Valle what her answer would be if asked whether appellant had any knowledge whether appellant created any of the pornography in question; she responded that she could not definitively say if he created any of them and she could

not exclude him as a creator. The trial court overruled appellant's objections, noting that "[e]verybody understands there is no way this court has the power to make this federal officer testify about what you're asking."

Del Valle testified she was contacted by the Waxahachie Police Department to assist with a dump and forensic examination of appellant's phone. She ran Cellebrite software on the phone to acquire the phone's data, extracted the data, and successfully dumped the data in a readable format. Del Valle said the phone contained over twelve dozen photos and videos, some of which contained images of child pornography. Fifteen of those images of child pornography were admitted in evidence, and a few were published to the jury. She said she found the images in an application on the phone called Telegram. The images involved children both performing and receiving sexual acts, and some images depicted sadomasochistic child abuse. The data indicated appellant looked at the images often.

Appellant's adoptive mother, Cindy Whitson, testified appellant came into the custody of the State after his biological mother and her girlfriend abandoned him. His biological mother had lived over a bar and would regularly leave appellant in the apartment by himself while she was at the bar. Cindy and her husband started caring for appellant when he was ten months old. They noticed immediately he was uncomfortable with human touch and did not want to be held in a rocking chair. They never knew the identity of appellant's father. Cindy said appellant was fun and loving, he loved other people, and he was embraced by her family and the other

foster kids. But she said he was fearful, as well, which she attributed to his early childhood. She said once when appellant was thirteen, she found him looking at pornography on the computer. Afterwards, she "would take the cords from the computer to where he could not" access it when she was not home. She also said appellant once ordered pornography through the mail. She was upset with him and ripped it up and told him such material was forbidden. Cindy did not think appellant should go to prison, but said he needed help and knew God could heal him.

Rani Wheat testified she was appellant's older sister and was also adopted by Cindy and her husband. She said she was glad appellant had been arrested because she thought he needed help; she said she knew he had issues with pornography in the past. Wheat asked the jury to have grace and see appellant as a broken person like anyone else and said that redemption and restoration can happen.

James Whitson, appellant's adoptive father, also testified. He said, among other things, he wanted to use his experience as a prison chaplain helping inmates with addiction issues to play a big part in helping appellant overcome his problems. On cross-examination, he agreed redemption can be found in prison. He also agreed that not everyone who experiences early trauma ends up a sex offender.

Dr. Aaron Pierce, a psychologist who treats offenders involved in the criminal justice system, testified for appellant. He said he had treated over 4,000 sex offenders over twenty-seven years. Pierce said the general consensus is that addiction is a disease and that "a mixture of things play into addictions and how they

develop." He said trauma can play a role: when we are young, our brains are growing and changing and connections are being made; if someone experiences trauma, or a severe stress, the development of the brain is impacted. Pierce said there was no doubt in his mind appellant experienced early childhood trauma. He said trauma can manifest behaviorally and in relationships and can lead to substance abuse, different addictions, and psychiatric illnesses, including attachment disorder. He described attachment disorder as arising when a child fails to make attachments and bonds when very young—something is missing developmentally, and the child's brain does not form and grow in a healthy way. Pierce said avoiding touch can be a signpost of attachment disorder. He said, hypothetically, if a child were born and not held, even when crying, this could cause trauma and lead to attachment disorder. Although he stopped short of formally diagnosing appellant as having this disorder, he said "there's symptoms there that would suggest the presence of it."

Pierce said addiction develops when the brain seeks out something it has experienced as pleasurable. The brain "wants to feel good and it wants us to feel good," and "so if we identify something through some experience, however we get there, whatever pathway that works, the brain likes it, the brain wants us to move toward that, and it'll encourage us to move toward that." Pierce said pornography addiction is real and that "we see a prevalence of it in the population." People begin looking at pornography and then "have a great difficulty stopping, just like people who use drugs and alcohol or other things." He said a typical offender begins

looking at adult pornography, they look at it more and more frequently, they discover new sites and more extreme forms of pornography, and "it can eventually make its way into something like child pornography." Pierce agreed that a twelve- or thirteen-year-old boy could be traumatized by being shamed for looking at pornography.

Pierce evaluated appellant using a sex offender risk assessment test and determined his score to be "0." Appellant "didn't hit on anything" and thus he was in a "low-risk category" and was "low risk for future sex offending behavior." Pierce said this was important for treatment and it should inform supervision departments on the level of supervision required. On cross-examination, he acknowledged that using child pornography as a coping mechanism could be a sign of poor impulse control. He denied that the level of severity of images viewed by the offender affects the offender's risk to reoffend, saying that "in terms of risk, there's nothing in the literature that separates" different kinds of sexually deviant images. Pierce evaluated appellant for psychopathy and said he scored a three out of a possible forty on his evaluation.

Pierce said people who suffer trauma sometimes do bad things, but that should not be the end of the story because people can be treated. With regard to child pornography addiction, he said he sees "a lot of positive change in this group" with treatment. He said he has seen successful treatment for child pornography offenders who "are able to avoid falling back into these behaviors, maintain good control,

develop healthier lifestyles, develop healthier lives, be very productive members of society and be safe." In his experience, child pornography offenders on probation are held accountable by probation officers. Pierce said his treatment involved working on behavioral controls, making environmental changes, incorporating family members to remove secrecy and increase accountability, and prescribing medicine to reduce libido. He said an important part of treatment is accepting responsibility.

Pierce described the difference between hands-off and hands-on offenders. The latter are those who have direct contact with a minor or person, while a hands-off offender has committed an "online offense," like appellant. The recidivism rate for hands-on offenders being treated, he said, is between about five and twelve percent. For hands-off offenders, the recidivism rate is between one and four percent. On cross-examination, he agreed that one study, however, noted there may be a significant underestimation of child pornography reoffenders, given that they are not necessarily being monitored.

In closing argument, defense counsel, among other things, reiterated that Glidewell testified appellant did not make any of the child pornography. Counsel argued appellant did not photograph the images and he did not know the children depicted. Counsel further argued, "And you know the evidence is clear, he did not photograph those. He did not set them up, there was testimony about that. He does not know these children." Counsel also focused on appellant's early childhood

trauma and argued the State published images of child pornography to distract the jury from considering appellant's difficult story. Counsel encouraged the jury to believe in redemption and recovery and asked it to recommend community supervision.

**Discussion**

We will assume without deciding appellant's confrontation rights were violated and evaluate any error for harm. A Confrontation Clause violation is constitutional error analyzed under Texas Rule of Appellate Procedure 44.2(a). TEX. R. APP. P. 44.2(a); *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020). Under that rule, "we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009). The question for the reviewing court is not whether the verdict was supported by the evidence but focuses instead on the likelihood the constitutional error was actually a contributing factor in the fact finder's deliberations in arriving at its verdict. *Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). In making this determination, factors we consider include, but are not limited to, the nature of the error, whether the error was emphasized by the State, the probable implications of the error, and the weight the fact finder would likely have assigned to the error in the course of its deliberations. *Id.* Factors more specific to the limitation of cross-examination include the importance of the

witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Haggard*, 612 S.W.3d at 329.

We conclude beyond a reasonable doubt that any error did not contribute to appellant's punishment. To reiterate, appellant argues he should have been permitted to ask Del Valle whether any evidence showed appellant created the pornography and whether her agency was investigating the creators of the pornography. Appellant was charged with and pleaded guilty to both possessing and promoting—sending an image via Instagram—child pornography. The evidence showed he acquired images online in exchange for money or he traded images with others, and no evidence showed or indicated that appellant created the images and videos. On the contrary, Glidewell testified appellant did not make any of the child pornography, and appellant emphasized that testimony before the jury. Del Valle indicated her response would have been she did not know but could not exclude appellant as a creator of the pornography, which was more equivocal than Glidewell's testimony on the same question. The record does not reveal what Del Valle's testimony would have been regarding any further investigations—she was prohibited from so testifying. Even supposing her answer would have been that the department was investigating any creators of the images and videos, we conclude

such information would not have changed the jury's verdict. The State presented compelling evidence of the egregious nature of the charged crimes, and appellant presented significant evidence in mitigation of punishment. All of this evidence related to the charged crimes and to appellant's role and culpability in them. We cannot conclude one line of testimony stating that the federal government was investigating others for other crimes—even if related—would have made a difference in the jury's verdict. Such testimony's importance to the defense is particularly limited here given that the evidence showed appellant obtained many of the images of child pornography at issue from individuals he believed to be young girls, who were presumably the creators of the images. Accordingly, we conclude beyond a reasonable doubt any error did not contribute to appellant's punishment. *See* TEX. R. APP. P. 44.2(a).

## Conclusion

We affirm the trial court's judgments.

/Ken Molberg/

Do Not Publish
TEX. R. APP. P. 47.2(b).
221094F.U05
221095F.U05

KEN MOLBERG
JUSTICE

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

JON RUSSELL WHITSON,
Appellant

No. 05-22-01094-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 443rd District
Court, Ellis County, Texas
Trial Court Cause No. 46632CR.
Opinion delivered by Justice
Molberg. Justices Reichek and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered July 18, 2024



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

JON RUSSELL WHITSON,
Appellant

No. 05-22-01095-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 443rd District
Court, Ellis County, Texas
Trial Court Cause No. 46633CR.
Opinion delivered by Justice
Molberg. Justices Reichek and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered July 18, 2024