# Authority of the Office of Government Ethics to Issue *Touhy* Regulations

The Office of Government Ethics may not issue *Touhy* regulations pursuant to 5 U.S.C. § 301 because OGE is not an "executive department" within the meaning of section 301.

OGE may issue *Touhy* regulations, insofar as they concern the production of agency records, pursuant to 44 U.S.C. § 3102.

OGE may issue regulations concerning the appearance of agency employees as witnesses on official matters, pursuant to the implied authority of OGE's organic statute, 5 U.S.C. app. § 401.

January 18, 2001

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT ETHICS

The Office of Government Ethics ("OGE") has asked for our opinion whether section 301 of title 5, United States Code, authorizes it to issue what are commonly referred to as *Touhy* regulations.[1] Those regulations govern agency procedures for the production of official files, documents, records, and information, and for the appearance of agency employees as witnesses on official matters, in connection with legal proceedings in which the agency is not a party.[2] We conclude that section 301 does not authorize OGE to issue such regulations. We further conclude, however, that OGE may issue *Touhy* regulations concerning the production of agency records pursuant to section 3102 of title 44, United States Code. With respect to *Touhy* regulations concerning employee testimony on official matters, we believe that OGE may issue them pursuant to the implied authority conferred on it by its organic statute, 5 U.S.C. app. § 401 (1994 & Supp. V 1999).

## I.

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the Supreme Court addressed the question whether the Department of Justice could issue a regulation governing the production of its official files, documents, records, and information pursuant to 5 U.S.C. § 22, the precursor to 5 U.S.C. § 301 (1994). In particular, this regulation required all officers and employees of the Department to refrain from disclosing any official papers, even in response to a subpoena duces

---

[1] These regulations derive their name from the Supreme Court case *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which upheld the authority of the Department of Justice to issue regulations governing the production of official files, documents, records, and information pursuant to 5 U.S.C. § 22, the precursor to 5 U.S.C. § 301.

[2] Memorandum for Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, from Stephen D. Potts, Director, United States Office of Government Ethics, *Re: Authority to Issue* Touhy *Regulations* (July 13, 1999) ("Potts Memorandum").

tecum ordering their production, except at the express direction of the Attorney General. *Id*. at 463 n.1. Without addressing the question whether the Attorney General himself could refuse to produce such documents, the Court held that the Attorney General could validly withdraw from his subordinates the power to release department papers. *See id*. at 467-68. Pointing to, among other things, the "obvious" usefulness and need for centralizing disclosure determinations, the Court stated that "it was appropriate for the Attorney General, pursuant to the authority given him by 5 U.S.C. § 22, to prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers, and property appertaining to' the Department of Justice, to promulgate [the regulation]." *Id*. at 468; *see also Boske v. Comingore*, 177 U.S. 459, 469-70 (1900) (concluding that the Secretary of Treasury had authority pursuant to the precursor to 5 U.S.C. § 22 to prescribe regulations withdrawing from employees control over departmental records, while stating "great confusion might arise in the business of the Department if the Secretary allowed the use of records and papers in the custody of collectors to depend upon the discretion or judgment of subordinates").

At issue here is whether OGE may prescribe such regulations. Applicable to legal proceedings in which OGE is not a party, OGE's contemplated *Touhy* regulations[3] would govern employee conduct with respect not only to requests for the production of official files, documents, records, and other information, but also to requests for the testimony of employees on official matters.[4] The current version of the statute relied upon by the Department of Justice to issue such regulations, 5 U.S.C. § 301, provides, in relevant part, "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." A note to section 301 states that the definition of the words "Executive department" is coextensive with the definition of the same in section 101 of title 5, United States Code. 5 U.S.C. § 301 note (2000). You have asked whether OGE, which is not among the executive departments enumerated in section 101, may nonetheless issue *Touhy* regulations under section 301 or any other source of authority.

---

[3] On March 20, 2000, OGE faxed to this Office a draft version of its proposed *Touhy* regulations.

[4] The Supreme Court in *Touhy* did not address the validity of the latter type of regulation, which would govern employee compliance with requests for official testimony. In its memorandum seeking our opinion, OGE assumes that the those portions of its regulation governing testimony would be authorized by 5 U.S.C. § 301. In light of our conclusion that section 301 does not apply to OGE, we need not address that question.

## II.

The authority of OGE to issue *Touhy* regulations under 5 U.S.C. § 301 turns on the meaning of the words "Executive department." Section 101 of title 5, United States Code, which was enacted as part of the same bill that enacted section 301, defines "Executive department" to include the Departments of State, Treasury, Defense, Justice, Interior, Agriculture, Commerce, Labor, Health and Human Services, Housing and Urban Development, Transportation, Energy, Education, and Veterans Affairs. *See* Act of Sept. 6, 1966, Pub. L. No. 89-554, 80 Stat. 378. The definition does not include OGE.

Several factors support the conclusion that the definition of "Executive department" in section 101 applies to that term as it is used in section 301. First, as mentioned above, section 101 and 301 were enacted as part of the same bill, Pub. L. No. 89-554, 80 Stat. 378 (1966). Second, section 301 follows shortly after section 101 in part I of title 5. Third, following a table illustrating that the derivation of 5 U.S.C. § 301 is 5 U.S.C. § 22, the revision notes explain that "[t]he words 'Executive department' are substituted for 'department' as the definition of 'department' applicable to this section is coextensive with the definition of 'Executive department' in section 101." 5 U.S.C. § 301 note (2000). While revision notes are not conclusive evidence of congressional intent, *see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 n.4 (1989), we may nonetheless accord them substantial weight. *See, e.g., Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 530 (1998). Absent any indication to the contrary, we thus believe that the appropriate definition for the term "Executive department" in section 301 is found in section 101.

In its memorandum, OGE states that "any executive agency, whether specifically listed among the executive agencies in 5 U.S.C. § 101 or not, should be covered by section 301 and should have the authority to issue [*Touhy*] regulations just as a matter of common sense administrative practice." Potts Memorandum at 4. Although it would no doubt have been sensible for Congress to have conferred such authority on agencies in section 301, Congress used the words "Executive department" in that provision, yet in other provisions of the bill enacting section 301 it used the term "agency," *see, e.g.*, 5 U.S.C. §§ 302, 305 (1994), and we presume that that difference was intentional. Section 302, for example, authorizes "the head of an agency" to delegate certain types of authority vested in him or her to subordinate officials. 5 U.S.C. § 302(b). There, Congress specified that the term "'agency' has the meaning given it by section 5721 of [title 5]." *Id*. § 302(a). That section defines "agency" to include, among other things, an executive agency, a military department, a court of the United States, and the Administrative Office of the United States Courts, but not a government-controlled corporation. *Id*. § 5721. The fact that Congress, in conferring particular powers, distinguished between the heads of executive departments in section 301 and the heads of agencies in section

302 counsels against assuming that Congress meant to confer the authority in section 301 on the heads of all executive agencies.[5] *See Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

We thus conclude that OGE is not an "Executive department" within the meaning of section 301, and thus OGE may not issue *Touhy* regulations pursuant thereto.

## III.

Although OGE may not issue *Touhy* regulations pursuant to section 301, we conclude that it may issue such regulations, insofar as they govern the production of agency records, pursuant to section 3102 of the Federal Records Act, 44 U.S.C. § 3102 (1994). That section provides, in relevant part:

> The head of each Federal agency shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency. The program, among other things, shall provide for (1) effective controls over the creation and over the maintenance and use of records in the conduct of current business.

The term "records" includes

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of

---

[5] It is unclear why Congress chose to give some powers to the heads of executive departments and not to the heads of executive agencies or other Executive Branch institutions. It is clear, however, that in enacting title 5, Congress was responding to the growing number and complexity of personnel statutes scattered throughout the United States Code. Congress sought to consolidate and "restate in comprehensive form, without substantive change, the statutes in effect before July 1, 1965, that relate[d] to Government employees, the organization and powers of Federal agencies generally, and administrative procedure." H.R. Rep. No. 89-901, at 1 (1965); S. Rep. No. 89-1380, at 18-19 (1966). Revisions of the language of the earlier statutes, the House and Senate reports explain, were intended not to have any substantive effect or to impair the precedential value of earlier judicial decisions and other interpretations of the statutes, but to facilitate the restatement of statutes relating to personnel in one comprehensive title. *See* H.R. Rep. No. 89-901, at 3; S. Rep. No. 89-1380, at 20-21. "Some of the changes [were] necessary to attain uniformity within the title," while "[o]thers [were] necessary to effect consolidation of related statutes and to conform to common contemporary usage." H.R. Rep. No. 89-901, at 2; S. Rep. No. 89-1380, at 19. The fact that Congress, in adopting amendments designed to attain "uniformity," nevertheless retained the disparate terminology of departments and agencies in title 5, strengthens the presumption that it acted deliberately.

> public business and preserved or appropriate for preservation by that
> agency or its legitimate successor as evidence of the organization,
> functions, policies, decisions, procedures, operations, or other activi-
> ties of the Government or because of the informational value of data
> in them.

*Id*. § 3301.

Unlike 5 U.S.C. § 301, 44 U.S.C. § 3102 extends to the head of "each Federal agency." The term "Federal agency" includes, *inter alia*, any "executive agency," 44 U.S.C. § 2901(14) (1994), which "means any executive department or independent establishment in the Executive Branch of the Government, including any wholly owned Government corporation," 40 U.S.C. § 472(a) (1994) (cross-referenced in 44 U.S.C. § 2901(13)). Defined as an "executive agency" in its enabling statute, 5 U.S.C. app. § 401, OGE is an independent establishment in the Executive Branch.

Pursuant to section 3102, OGE may establish effective controls over the "maintenance and use of records in the conduct of current business." 44 U.S.C. § 3102. "Records maintenance and use" includes, among other things, "any activity involving . . . storage, retrieval, and handling of records kept at office file locations by or for a Federal agency." *Id*. § 2901(4). *Touhy* regulations governing the production of official documents, files, or materials in connection with a legal proceeding would concern the "retrieval," "handling," and "use" of agency records, and thus would be authorized by section 3102.[6] Indeed, such regulations, which provide for the centralization of all requests for the production of agency records, would qualify as part of a program for the "economical and efficient management of the records of the agency." *Id*. § 3102.

That the regulations might cover a broader range of documents and materials than would otherwise be included within the definition of "records," as that term is used in the Federal Records Act, does not alter that conclusion. The agency is statutorily required to establish effective controls for an extremely broad range of materials, those providing "evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Government," *id*. § 3301, and thus the extent to which the regulations would be over-inclusive would likely be minimal. Moreover, regulations promulgated by the National Archives and Research Administration ("NARA") to implement the Federal Records Act make clear that agencies must exercise control over all agency

---

[6] As the legislative history of the Federal Records Act makes clear, "the measure of effective records management should be its usefulness to the executives who are responsible for accomplishing the substantive purposes of the organization." S. Rep. No. 81-2140, at 4 (1950). The Act requires agency heads to establish a system of records management not "to satisfy the archival needs of this and future generations, but first of all to serve the administrative and executive purposes of the organization that creates [the records]." *Id*.

documents in order to discharge their responsibility to identify the records appropriate for preservation. NARA regulations require each federal agency, among other things, to "[d]evelop and implement records schedules for *all* records created and received by the agency." 36 C.F.R. § 1222.20(b)(6) (2000) (emphasis added). A "comprehensive schedule" is a "printed agency manual or directive containing descriptions of and disposition instructions for all documentary materials, record and nonrecord, created by a Federal agency." *Id*. § 1220.14. Thus, the Federal Records Act empowers an agency, such as OGE, to exercise control over all agency materials, not merely those that qualify as "records" within the meaning of that Act.

It is noteworthy, furthermore, that the language of section 3102 discussed here is very similar to that found in the precursor to 5 U.S.C. § 301, 5 U.S.C. § 22, which the Attorney General relied upon in establishing the regulations concerning the production of materials by Department of Justice employees that were at issue in *Touhy*. That is, the authority conferred on agency heads to establish effective controls over "the maintenance and use of records in the conduct of current business," 5 U.S.C. § 3102, appears, at least for the question presented here, functionally equivalent to the authority conferred on department heads to prescribe regulations for "the custody, use, and preservation of the records, paper, and property" of the department, 5 U.S.C. § 22. As mentioned above, the Supreme Court in *Touhy* concluded that the latter provision authorized the Attorney General to issue regulations withdrawing from subordinates the power to release department records. *See* 340 U.S. at 468. In light of the substantial similarity of the two provisions, *Touhy* provides additional support for the conclusion that section 3102 would authorize such regulations.

## IV.

As mentioned above, OGE's contemplated *Touhy* regulations would concern not only requests for the production of official files, documents, records, and other information, but also requests for the testimony of employees on official matters.[7] While it is unclear whether OGE could rely, at least in part, on section 3102 to issue *Touhy* regulations governing such testimony requests,[8] we believe that OGE

---

[7] We do not understand the proposed *Touhy* regulations to apply to requests for testimony by an agency employee on matters unrelated to his or her official duties or functions. We therefore do not address whether OGE has the authority to issue regulations governing such testimony.

[8] One might argue, for example, that, to the extent the regulations govern requests for testimony concerning information in agency records, they would be within the discretion of agency heads pursuant to section 3102. On that view, because agency employees preparing for testimony can often be expected to seek access to and review agency records, an agency head may reasonably conclude that the centralization of requests for testimony would better enable the agency to control and oversee the use of its records. Because we believe OGE may issue testimony regulations pursuant to 5 U.S.C. app. § 401, we do not address that argument.

may nonetheless issue them pursuant to the implied authority conferred on OGE by its organic statute, 5 U.S.C. app. § 401. Courts have long recognized that the government as a whole enjoys a common law deliberative process privilege that allows it to withhold information that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (internal quotation marks omitted). In authorizing OGE to make a variety of governmental decisions and to formulate governmental policies,[9] Congress must have intended the agency to enjoy the benefit of this privilege, which is designed "to prevent injury to the quality of agency decisions." *Id*. (internal quotation marks omitted). Congress must therefore be understood to have implicitly conferred on the agency the means necessary to avail itself of the privilege. Advance notice and centralized review of testimony requests would allow OGE to make a timely and informed decision whether assertion of this privilege is necessary to protect privileged deliberations. Indeed, absent a notice requirement, an employee would be more likely to disclose confidential matters without informing the agency, and the privilege could then be found to have been waived. Because there must be the centralization of disclosure determinations for OGE to be able to preserve and assert this and any other privilege the government may assert in litigation,[10] we conclude that the authority to provide for such centralization may be inferred from the organic statute. *See United States v. Bailey*, 34 U.S. (9 Pet.) 238, 255 (1835) ("where the end is required, the appropriate means are given"); *cf. United States v. Maurice*, 26 F. Cas. 1211, 1216 (No. 15,747) (C.C. Va. 1823) (Marshall, C.J.) ("there is a power to contract in every case where it is necessary to the execution of a public duty").[11]

---

[9] OGE's statutory responsibilities include, among other things, promulgating rules and regulations pertaining to conflicts of interest and ethics in the Executive Branch, monitoring and investigating compliance with federal public financial disclosure requirements by officers and employees of the Executive Branch, conducting reviews of financial statements to determine whether such statements reveal possible violations of applicable conflict of interest laws or regulations, and ordering corrective action on the part of agencies and employees which the Director deems necessary. *See* 5 U.S.C. app. § 402 (1994).

[10] The Director of OGE is expressly authorized to appoint attorneys, 5 U.S.C. app. § 401(c)(1), who are entitled to assert the attorney-client privilege with respect to certain communications with other agency employees. *See Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.").

[11] In concluding that the issuance of the proposed *Touhy* regulations governing official information unrelated to agency records could be a proper exercise of OGE's authority pursuant to its organic statute, we note that the proposed regulations primarily function as an internal rule of operation for OGE, with only minimal effect on outside parties. The regulations would withdraw from subordinates decision-making autonomy with respect to official testimony and simply require outside parties to submit their testimony requests to a designated party for the agency. The regulations, as we understand them, would not confer on the head of OGE an independent basis of authority to deny requests for testimony.

Recognition of this implied authority is buttressed by constitutional considerations. OGE is part of the Executive Branch and subject to the supervision of the President. The President, in turn, has the authority to prevent the disclosure of documents and information "whenever [he] finds it necessary to maintain the confidentiality of information within the Executive Branch in order to perform his constitutionally assigned functions." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 116 (1984). The Director of OGE must therefore be able to learn of subpoenas for documents and testimony, and to supervise responses to these demands for information, in order both to apprize the President of any possible need to invoke executive privilege, and to comply with a presidential assertion of privilege. Accordingly, the separation of powers principles that underlie the doctrine of executive privilege support our conclusion that OGE has implicit authority to centralize disclosure determinations.

## V.

We conclude that OGE may not issue *Touhy* regulations pursuant to 5 U.S.C. § 301 because OGE is not an "executive department" within the meaning of section 301. We further conclude, however, that OGE may issue such regulations, insofar as they concern the production of agency records, pursuant to section 3102 of the Federal Records Act. With respect to regulations concerning the appearance of agency employees as witnesses on official matters, we conclude that OGE may issue them pursuant to the implied authority of its organic statute, 5 U.S.C. app. § 401.

JOSEPH R. GUERRA
*Deputy Assistant Attorney General*
*Office of Legal Counsel*