**TRAVEL SENTRY, INC., Plaintiff,**

v.

**David A. TROPP, Defendant.**

**No. 06–CV–6415 (ENV).**

United States District Court, E.D. New York.

Nov. 18, 2009.

**280**

Heidsha Sheldon, Peter S. Brooks, William Loening Prickett, Seyfarth Shaw LLP, Boston, MA, James S. Yu, Seyfarth Shaw LLP, New York, NY, for Plaintiff.

Donald R. Dinan, Roetzel & Andress, LPA, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

VITALIANO, District Judge.

Plaintiff Travel Sentry, Inc. ("Travel Sentry") appeals from Magistrate Judge Roanne L. Mann's Memorandum and Order dated February 11, 2008, granting in part and denying in part a motion of defendant David A. Tropp for sanctions, and from her Memorandum and Order dated May 15, 2008, 2008 WL 2097613, denying its request for reconsideration. For the reasons set forth below, this Court affirms Judge Mann's imposition of sanctions and dismisses Travel Sentry's appeal.

### BACKGROUND

Familiarity with the underlying facts is presumed, but briefly summarized, on December 4, 2006, Travel Sentry commenced this action seeking declarations of invalidity and non-infringement of two patents

issued to Tropp protecting a dual access luggage lock system. Travel Sentry is the developer of a similar luggage lock technology. The founder and CEO of Travel Sentry, John Vermilye, was previously employed as a consultant to the Transportation Security Administration ("TSA"). While at TSA in 2002, Vermilye participated in the design and implementation of a luggage screening and lock opening program (the "2002 Program") that Travel Sentry now contends constitutes prior art invalidating Tropp's patents.

At some point in late 2006, while investigating its client's claims, an attorney at Seyfarth Shaw LLP ("Seyfarth"), counsel to Travel Sentry, spoke with Kurt Krause, a former TSA employee who had worked with Vermilye on the 2002 Program. Shortly thereafter, Krause provided the attorney with a disc containing electronic copies of 193 TSA-generated documents (the "Krause documents"), a number of which were marked as containing sensitive security information ("SSI").[1] The legend in the lower margin of the documents marked SSI reads:

WARNING, THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 49 CFR PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF TRANSPORTATION FOR SECURITY, WASHINGTON DC 20590. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR

1. The protection of SSI is governed by Department of Homeland Security regulations, codified at 49 C.F.R. § 1520 *et seq.*, that were adopted after September 11, 2001 and amended in 2004. In general, SSI is information obtained or developed in the conduct of TSA's security activities, including research

and development, the disclosure of which TSA has determined would constitute an invasion of privacy, reveal trade secrets or privileged or confidential information and/or be detrimental to the security of transportation. *See* 49 C.F.R. § 1520.5.

OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

Request for reconsideration at 3 n. 3. Travel Sentry does not dispute that many of the Krause documents—41, as later determined by TSA—were relevant to the 2002 Program. According to Travel Sentry, however, the Krause documents contained "no prior art information regarding how the 2002 Program worked that Tropp did not already know," and "simply corroborate[d]" the deposition testimony of Vermilye and others describing the 2002 Program. *Id.* at 13.

On December 22, 2006, Travel Sentry served its initial disclosures, which did not specifically identify the Krause documents but did reference a category of documents generally described as "prior art that renders the claims of [Tropp's] patents invalid." On February 15, 2007, Tropp served Travel Sentry with a set of document requests seeking, *inter alia,* "all documents and things referring to any prior art that Travel Sentry believes is relevant to the patents-in-suit" and "all documents and things referring or relating to the Transportation Security Administration or any other governmental agency or baggage screening entity." In its March 26, 2007 response, Travel Sentry objected to both requests as "vague, ambiguous, and overly broad," but agreed to produce all responsive non-privileged documents subject to its objections. However, Travel Sentry did not include the Krause documents in its initial document production on May 2, 2007, or in any subsequent production, nor

did it supply a privilege log listing those documents.

Travel Sentry simply did not tell Tropp, TSA, Judge Mann or anyone else that Seyfarth had copies of the Krause documents—a decision that Travel Sentry and Seyfarth jointly made. Travel Sentry maintains that the primary reason for the decision not to produce or acknowledge was that the documents bore and were controlled by the SSI legend. Additionally, Travel Sentry concedes as well that it was concerned about exposing Krause to liability and angering TSA, its business partner.

Of course, notwithstanding any worries about national security, Krause's liability for violating federal security regulations or its business relationship with TSA, Travel Sentry still wanted to use some of the Krause documents—18, to be precise—as evidence to corroborate its prior art argument. Thus, Travel Sentry opted to make a *Touhy*[2] request to TSA, targeting those 18 documents.[3] *See* Feb. 11th order at 4. According to Travel Sentry, it viewed the *Touhy* request as a way "to balance [the] competing requirements" of its disclosure obligations and the confidentiality of SSI documents, while also shielding Krause from the consequences of leaking documents. Appeal at 4–5.

From Travel Sentry's perspective, it seems, the only fly in the ointment was its failure to correctly predict the time it would take to accomplish the switch. Travel Sentry served its initial *Touhy* request on TSA on May 9, 2007, three months after Tropp's initial document requests were made and one week after

---

**2.** Referring to *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), which permits federal agencies such as TSA to promulgate regulations specifying how employees respond to subpoenas for documents and testimony.

**3.** Travel Sentry's initial *Touhy* request covered 24 categories of documents, the first 18 of which specifically described the documents that Travel Sentry intended to use as evidence, and the last six of which were much broader, umbrella categories.

Travel Sentry's initial production of documents to Tropp. At that point, the deadline for fact discovery was July 16, 2007. During the summer of 2007, TSA told Travel Sentry that it was having trouble finding some of the requested files, and that its efforts were hampered by the fact that the employees familiar with the 2002 Program and the relevant files had all left the agency. As TSA searched, no one at Travel Sentry or Seyfarth apprised TSA that they already had copies of the Krause documents in their possession. Upset by the agency snafu, Travel Sentry blamed TSA for not being fully forthcoming during this time: "at *no* time did the TSA indicate ... that the documents were lost or could not be found. To the contrary, the TSA continued to string Travel Sentry along, stating that it was making progress and needed additional time to complete its gathering and review of the documents." Appeal at 5.

On June 7, 2007, at the conclusion of a settlement conference, Judge Mann extended the deadline for fact discovery one month, to August 16th. On August 6th, Travel Sentry (with Tropp's consent) filed a motion for an additional extension, stating that it needed more time to conduct discovery because "the TSA has not yet produced any of the requested documents from the May 9 request, and Travel Sentry needs the documents requested from the TSA in order to prepare for and take the deposition[ ] of ... Krause." The magistrate judge granted the request and pushed back the discovery deadline for another six weeks, to October 1, 2007.

On September 18, 2007, TSA informed Travel Sentry that it had only managed to locate two documents in response to the initial *Touhy* request, and had not yet screened these documents for SSI in preparation for production. Even then, rather than own up to having received the Krause documents, Travel Sentry served a *Touhy*

request on Krause himself (seeking to have him provide TSA with the documents) and filed another request (again with Tropp's consent) to extend the discovery deadline. Judge Mann once more granted Travel Sentry's application and extended the deadline for another month, to November 1, 2007.

Upon receiving his own *Touhy* request from Travel Sentry—which, like the initial *Touhy* request to TSA, specifically described and requested 18 documents that Travel Sentry had been given by Krause himself nine months earlier—Krause turned a box of documents over to TSA for review. On October 17, 2007, TSA informed Travel Sentry that its review of the box had yielded only one additional responsive document. Cornered by its own deception, it immediately became clear to Travel Sentry that it would have to disclose that it had actually already received the Krause documents from Krause and to send copies of them to TSA for SSI review. So, that very day, Travel Sentry advised TSA and Tropp that Seyfarth had the Krause documents. The next day, Travel Sentry sent the Krause documents to TSA in two batches, the first containing the 18 documents it viewed as most relevant and the second containing all the other Krause documents. According to Travel Sentry, the batch of 18 was singled out in order to prioritize and expedite TSA's review, given that Krause's deposition was scheduled to begin seven days later. Appeal at 6 n. 11.

Five days after receiving Travel Sentry's notice, Tropp filed the sanctions motion, seeking an order precluding Travel Sentry from deposing, calling as a trial witness or otherwise adducing any testimony from Krause. On November 19, 2007, Judge Mann contacted TSA with the parties' consent to clarify the status of its review. Counsel for TSA informed Judge

Mann that the agency was reviewing all of the documents provided, not just the 18 that Travel Sentry wanted, and would produce all of the relevant Krause documents at the same time to the Court after SSI screening. On November 28, 2007, TSA completed its review and submitted the 41 documents it deemed relevant to Judge Mann, who then released them to both parties.

In the February 11th order, Judge Mann declined to impose the sanction of witness preclusion, but instead: (1) reopened fact discovery for the limited purpose of allowing the deposition of Krause to be conducted and allowing Tropp to explore fully the newly disclosed documents (including through deposition of previously examined witnesses), (2) ordered Travel Sentry and Seyfarth on a joint and several basis to pay Tropp's attorney's fees and expenses incurred in connection with the additional discovery and the sanctions motion, and (3) ordered Seyfarth alone to pay a $10,000 fine to the Clerk of the Court. On February 26, 2008, Travel Sentry sought reconsideration of the sanctions decision, which was denied by Judge Mann in her May 15th order. On June 9, 2008, Travel Sentry submitted the instant appeal, requesting that this Court vacate the sanctions imposed by Judge Mann.

## DISCUSSION

### A. Legal Framework

A nondispositive motion decided by a magistrate judge will be modified or set aside by the district judge assigned to the case only where the order is clearly erroneous or contrary to law. *See* Fed. R.Civ.P. 72(a). "Matters concerning discovery," including sanctions for violations of discovery obligations, "generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990) (cita-

tion omitted); *see also Federal Ins. Co. v. Kingsbury Properties, Ltd.*, No. 90 Civ. 6211, 1992 WL 380980, at *2 (S.D.N.Y. 1992). Resolution of a discovery dispute by a magistrate judge in the form of an order is appropriate, and the district court considers objections to it as an appeal from that order. *See, e.g., Thomas E. Hoar, Inc.*, 900 F.2d at 525; *Sheppard v. Beerman*, No. 91–1349, 1999 WL 1011940, at *2 (E.D.N.Y. Sept. 23, 1999).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for South. Cal.*, 508 U.S. 602, 622, 113 S.Ct. 2264, 2279, 124 L.Ed.2d 539 (1993) (*citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000) (citation and internal quotations omitted). "Pursuant to this highly deferential standard of review, [magistrate judges] are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Commodity Futures Trading Com'n v. Standard Forex, Inc.*, 882 F.Supp. 40, 42 (E.D.N.Y.1995). Thus, a "party seeking to overturn a discovery ruling [by a magistrate judge] generally 'bears a heavy burden.'" *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F.Supp. 1078, 1099 (E.D.N.Y.1990) (citations omitted); *see* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069 (2d ed. 2009) ("[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the

district judge."). Because Travel Sentry's appeal addresses a discovery sanctions issue, the Court applies a deferential standard of review.

## B. Review of Judge Mann's Memoranda and Orders

In the February 11th order, Judge Mann found that Travel Sentry did not violate its initial disclosure requirements under Rule 26(a), but that its failure to disclose the existence of the Krause documents on a privilege log or produce them in response to Tropp's document request violated Rules 26(b)(5) and 34. Judge Mann determined that Travel Sentry (a) acted deliberately to protect its business interests, with the calculating advice of its counsel, (b) absent demonstration of any substantial justification, failed to satisfy its discovery obligations, and (c) then willfully covered up its noncompliance. As a result, she concluded that Travel Sentry's conduct warranted sanctions under Rule 37(b) and (d). Rather than impose the harsher sanction of witness preclusion that Tropp had requested, Judge Mann ordered instead Travel Sentry and Seyfarth on a joint and several basis (deeming both "responsible for the discovery abuses in this case") to reimburse Tropp for his attorney's fees and expenses incurred in connection with the continuance of discovery and his pursuit of sanctions. Additionally, Judge Mann found that "Seyfarth's knowing participation in these discovery violations is also deserving of sanctions" under Rule 26(g) and the Court's inherent power, noting: "Seyfarth's responses to Tropp's document demands suggested that full production had been made, and its submissions repeatedly misled the Court into believing that neither Travel Sentry nor its counsel was in possession of the documents sought from the TSA." Feb. 11th order at 17. In light of her findings, Judge Mann fined Seyfarth $10,000 and ruled that the fine would not be taxable by Seyfarth to Travel Sentry or Tropp under any circumstances. In the May 15th order, Judge Mann reconsidered and reaffirmed these sanctions. This appeal then followed.

### 1. Challenge to the Award of Attorney's Fees

As an initial matter, Travel Sentry appears to be under the mistaken impression that Judge Mann awarded attorney's fees pursuant to Rule 37(c), which provides for sanctions in the event of a party's "failure to disclose, to supplement an earlier response, or to admit" as required by Rule 26. Request for reconsideration at 9, 18; Appeal at 8. According to Rule 37, the default sanction for a violation of Rule 26 disclosure requirements is preclusion of the improperly withheld material, although the Court retains discretion to impose other or different penalties. *See* Fed.R.Civ.P. 37(c) ("If a party fails to provide evidence or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court" may issue other orders.). As noted above, Judge Mann expressly held in the February 11th order that Travel Sentry had not violated its Rule 26 duty of automatic disclosure, and accordingly, that Rule 37(c) was inapposite. But Judge Mann also found that (1) Travel Sentry's failure to provide a privilege log listing the Krause documents did violate Rule 26(b)(5), warranting sanctions under Rule 37(b), and (2) its failure to produce those documents violated Rule 34, warranting sanctions under Rule 37(d). The default sanction for both of those violations is attorney's fees. *See* Rule 37(b)(2)(C) ("Instead of or in addition to" other sanctions, "the court must order the disobedient party" to pay the other

party's expenses, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."), (d)(3)(same).

■ "[T]he test for avoiding the imposition of attorney's fees for resisting discovery in district court is whether the resistance was 'substantially justified'.... [T]hat has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute' ... or 'if reasonable people could differ' " regarding the appropriateness of the conduct at issue. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted). In the February 11th and May 15th orders, Judge Mann addressed at length whether the conduct of Travel Sentry and Seyfarth with respect to the Krause documents was substantially justified. Based on the entire record, Judge Mann held that it was not, and this Court finds that conclusion to be neither clearly erroneous nor contrary to law. Indeed, her conclusion is correct regardless of the standard of review. Simply, record support for Judge Mann's findings and determinations is clear and compelling.

Of absolutely no moment is Travel Sentry's argument that "reasonable people could differ," and that the magistrate judge failed to fully account for the unusual circumstance that the Krause documents contained sensitive information of importance to national transportation security. This, Travel Sentry contends, justifies the decision not to comply with disclosure obligations, especially given the absence of clear precedential guidance about its perceived conflict between discovery obligations and national security. As a result, Travel Sentry argues, its unilateral determination that that the *Touhy* request was the best route to meeting both of the conflicting obligations was reasonable and beyond sanction.

Despite the touching concern Travel Sentry now expresses for national security, until its *Touhy* request ploy backfired, Travel Sentry never raised an alarm. It never alerted TSA that agency security had been breached. Nor did it reach out to any law enforcement agency. Nor did it seek assistance of the Court.

And in the last, especially, lies the rub. A reasonable person in Travel Sentry's position would have to have been cognizant of the general principle that "any deferral of disclosure requires action by the Court; it cannot be accomplished unilaterally." *Willard v. Constellation Fishing Corp.,* 136 F.R.D. 28, 31 (D.Mass.1991). Although Travel Sentry purports to have withheld the Krause documents on grounds of national security and government privilege, it did not, as the rules require, provide a log reflecting the assertion of that privilege. Nor did it pursue an alternate course requesting a protective order to authorize it to withhold the documents or petition to file them under seal and seek the Court's guidance. As Judge Mann accurately observed, "[e]ven assuming *arguendo* that Travel Sentry misunderstood its obligations to identify SSI materials on a privilege log, the law is clear 'that a party may not independently withhold production without court authorization,' but must instead seek a protective order delaying production." Feb. 11th order at 13–14 (*citing Costa v. AFGO Mech. Servs., Inc.,* 237 F.R.D. 21, 24 (E.D.N.Y. 2006)). Similarly, assuming *arguendo* that law or rule allowed Travel Sentry to avoid producing the undisputedly responsive and relevant Krause documents in its possession by serving a *Touhy* request on TSA, Travel Sentry should still have first sought a protective order. *See, e.g., Kindred Rehab Svcs., Inc. v. Florida Convalescent Centers, Inc.,* No. 06–cv–218, 2007 WL 1695991, at *2 (M.D.Fla. June 11, 2007).

The bottom line is this: while reasonable persons might disagree about how the conflict between disclosure and national security should *ultimately* be resolved, no reasonable person, especially an attorney, could dispute that the *initial* step in resolving any such conflict would be to seek the guidance of the Court rather than pick a route of its own unilaterally. There is no justification whatsoever for Travel Sentry's decision to keep the Court in the dark.

Lastly on this score, Judge Mann meted out a penalty—reimbursement of Tropp's attorney's fees—that fit the foul. The magistrate judge found that Tropp had been prejudiced by Travel Sentry's concealment of the Krause documents because, as a result, Travel Sentry had the advantage of knowing of their existence and contents as they conducted discovery, an opportunity denied to Tropp.[4] Yet, Judge Mann properly acknowledged that this prejudice was not incurable; in fact, Tropp did ultimately obtain access to the documents, and with a continuance was able to pursue additional discovery. In light of the fact that the prejudice to Tropp was not irreparable and the hornbook understanding that justice prefers cases to be resolved on the merits, Judge Mann opted to impose the lesser sanction of attorney's fees, allowing Tropp to recoup the substantial expenses he incurred in litigation over Travel Sentry's discovery violations.[5]

To reprise, the Court finds that Judge Mann's decision to sanction Travel Sentry and Seyfarth was neither clearly erroneous nor contrary to the law, and did not constitute an abuse of discretion. As reflected both in the February 11th order and May 15th order, Judge Mann took into account all of the relevant facts and circumstances (giving Travel Sentry and Seyfarth the benefit of the doubt in every possible way), engaged in a detailed, well-reasoned and comprehensive analysis of the applicable law and properly tailored the specific sanctions imposed to the offensive conduct at issue. There is nothing to disturb and much to applaud. Had the review been *de novo*, this Court would have reached the same conclusion. The appeal from the award of sanctions is dismissed.

### 2. *$10,000 Fine Imposed On Seyfarth*

■ The Court likewise concludes that Judge Mann's imposition of a $10,000 fine on Seyfarth alone was not an abuse of discretion. Judge Mann found Seyfarth "to be deserving of sanctions under Rule 26(g) and the Court's inherent power." Rule 26(g) charges all attorneys with a special, "affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes" of liberal discovery. *See* Advisory Committee Note, Fed.R.Civ.P. 26 (1983). As officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor. *See generally Unit-*

---

**4.** Travel Sentry challenges this finding as erroneous on the ground that the Krause documents simply corroborated information about the 2002 Program that both parties already knew, but cites no authority contradicting Judge Mann's conclusion that "knowledge of the existence and precise contents of any corroborative documentary evidence is itself critical information" in this case, and that Tropp was prejudiced by "[h]aving been deprived of that information for more than six months." May 15th order at 11–12.

**5.** Additionally, to address Travel Sentry's protest that Tropp had allowed depositions of certain witnesses to go forward without objection after he learned of the existence of the Krause documents, Judge Mann modified the attorney's fee sanction and authorized Travel Sentry either to oppose re-deposition of those witnesses or to disclaim liability for Tropp's related expenses.

*ed States v. Gotti*, 322 F.Supp.2d 230, 236–38 (E.D.N.Y.2004). Clearly, whether or not Seyfarth's conduct during discovery exhibited bad faith, Seyfarth's handling of the Krause document imbroglio certainly showed a lack of candor, to say the least.

In her February 11th order, Judge Mann concluded that "the flagrant and willful nature of the discovery violations, coupled with counsel's deceptive representations to the Court, warrant an additional deterrent sanction in the nature of a fine [against Seyfarth]." Feb. 11th order at 20. Judge Mann spent months presiding over the discovery process in this case, communicating frequently with counsel for both parties as well as counsel for TSA; her evaluation of Seyfarth's performance during discovery is based on first-hand knowledge and experience. Judge Mann's imposition of sanctions on the firm was certainly not undertaken lightly or without provocation. Seyfarth must carry an extremely heavy burden on appeal. And Seyfarth comes nowhere close, largely relying on arguments that were unavailing when offered on the appeal of the Rule 37 sanctions against itself and Travel Sentry that have already been sustained above.

When the fog of litigation lifts, one fact remains unassailable: at the start of discovery, attorneys at Seyfarth *knew* that they were misleading the court (as well as Tropp and TSA), and made no attempt to correct or clarify the false impressions that their statements left.[6] Judge Mann found, and this Court wholeheartedly agrees, that Seyfarth's conduct here was in no way consistent with the spirit and purposes of federal discovery rules. *See* Feb. 11th order at 17 (*citing* Advisory Committee

Note, Fed.R.Civ.P. 26 (1983)). Further, Judge Mann labeled Seyfarth's attempt to justify its behavior as disingenuous, observing that Seyfarth, on behalf of its client, acted in a self-serving manner in violation of the rules, which resulted in the expense of needless time and effort (and money, in Tropp's case) to discover, investigate and remediate Seyfarth's conscious concealment of the facts and the Krause documents. The Court finds no error in any of, and, to the contrary, ample support for, the determinations of Magistrate Judge Mann. Even on a de novo review, the Court would be in total accord that a sanction in the form of a fine is appropriate to deter Seyfarth and others from engaging in any similar hide-the-ball discovery gamesmanship in the future. The amount of the fine, $10,000, is also reasonable and appropriate, and clearly sustainable either on a clear error or *de novo* review.

### CONCLUSION

For all of the foregoing reasons, the award of sanctions, including the separate fine of $10,000 imposed on the firm of Seyfarth Shaw LLP, is affirmed in its entirety and the appeal is dismissed.

SO ORDERED.

---

**6.** To some extent it continues. Seyfarth argues still that its repeated statements to Judge Mann that "Travel Sentry needs the documents requested from TSA in order to prepare for and take" Krause's deposition were "accurate and not misleading." Appeal at 23–24.

But it is beyond obvious that this statement, *particularly in the context of a request to extend the discovery deadline,* would be taken by any reasonable listener to signify that Travel Sentry did not already have in its possession the very documents it claimed to "need".